Will **FLITCROFT** and Agnes D. Flit-croft, Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

No. 18628.

United States Court of Appeals
Ninth Circuit.

Feb. 28, 1964.

Ernest R. Mortenson and Eugene Harpole, Pasadena, Cal., for appellants.

John B. Jones, Acting Asst. Atty. Gen., Meyer Rothwacks, Earl J. Silbert and Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

This petition for review, involving income taxes for the years 1954, 1955 and 1956, presents the question of whether the income of three short-term trusts set up by taxpayers in behalf of their minor children was includible in taxpayers' gross income under the provisions of section 673(a) of the Internal Revenue Code of 1954.[1]

Petitioners, husband and wife, were partners in a business enterprise known as Western Hydraulic and Service Company.[2] In June, 1952, Richard H. Miers made an audit of the partnership's books. During the following month he was engaged to keep the books and records of the partnership. Thereafter petitioner Will Flitcroft and Miers from time to time discussed the advantages which petitioners might derive by creating trusts for the benefit of their two minor children and including these trusts in the partnership. At a meeting in November, 1952, attended by petitioners, their children, aged 10 and 12 years, Miers, and an attorney recommended by Miers, it was decided to create a ten year trust for each of the children and to form a new partnership composed of petitioners and the two trusts, each owning a 25 percent interest. Miers was to be appointed sole trustee.

Petitioners executed an agreement dated December 31, 1952, dissolving the existing partnership. Petitioners and Miers, as trustee, executed two trust agreements, referred to herein as trusts A and B, each dated January 1, 1953, providing that the trusts would cease and terminate on January 6, 1963.[3] Each agreement named one of the petitioners' children as beneficiary.

At the same time petitioners and Miers, as trustee for each of the trusts, executed an instrument entitled "Agree-

1. Section 673(a), I.R.C. of 1954, reads:
"(a) General rule.—The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception of that portion of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust."

2. Petitioners first became associated with the business on November 1, 1945. Be-ginning April 1, 1946, they were the sole partners, each owning a 50% interest.* Will Flitcroft managed the business.

3. Article 7 of each trust provided:
"This Trust has been accepted by the Trustee and will be administered in the State of California, and its validity, construction and all rights thereunder shall be governed by the laws of that State. If any provision of this Trust Agreement should be invalid or unenforceable, the remaining provisions thereof shall continue to be fully effective."

ment of Partnership". It provided that the name of the partnership should be Western Hydraulic & Service Company; that the partnership should begin January 1, 1953, and end December 31, 1962; that the capital contributions should consist of the assets, subject to the liabilities, shown on an attached statement; and that each partner owned an undivided one-fourth interest.

In March or April, 1953, petitioners acquired a 60 percent interest in a parcel of real estate which later became the partnership's new business location. A 10 year lease agreement was executed between petitioners, owners of 60 percent, and John O. Best and wife, owners of 40 percent, as lessors and the partnership as lessee, beginning October 1, 1953, and ending September 30, 1963. On October 1, 1953, petitioners formed a third trust, C, with petitioners' two children as beneficiaries, and Miers as trustee. This trust was to run from October 1, 1953 until October 6, 1963. Petitioners conveyed, by quitclaim deed, their 60 percent interest in the property to this trust and also assigned to it their interest as lessors.

On April 15, 1954, petitioners, individually, filed federal income tax returns for 1953, each return reporting the gifts to the respective trusts. Petitioners also filed gift tax returns with the State of California for the year 1953, reporting the gifts to the trusts. Petitioners' attorney received a letter dated June 29, 1954, from the office of the Controller of the State of California, Chief Inheritance Tax Attorney, which stated:

"We have examined the trusts executed by the above named donors * * * [taxpayers], and are wondering whether at the time of the execution, they had in mind Section 2280 of the Civil Code.[4]

"It appears to us that in view of this section, the trusts are revocable, and that no gift tax is due. May we have your thoughts on this point?" Petitioners' attorney replied on July 21, 1954, as follows:

"When the trusts were prepared and executed by the Donors * * * [taxpayers] consideration was not given to the effect of Section 2280 of the Civil Code.

"It was and is the intention of the Donors * * * [taxpayers] that the Trusts should be irrevocable and therefore I will prepare and have signed by them (and furnish you with a true copy), an amendment to the Trust Indentures making the Trusts irrevocable and waiving any rights the Donors * * * [taxpayers] might have to revoke the same under said Section 2280.

"I trust this will remedy the situation and the Trusts will then qualify for gift tax purposes."

Taxpayers and Miers executed an amendment, dated July 30, 1954, to each of the three trust agreements, which provided:

"WHEREAS, it has been called to the attention of the trustors that, under Section 2280 of the Civil Code of the State of California, said trust may be revocable because it is not by its terms made expressly irrevocable; and

"WHEREAS, it was, always has been and is the expressed intention of First Parties * * * [taxpayers] that said trust should be irrevocable.

---

4. Section 2280, Civil Code of California, reads:

"REVOCATION OF TRUSTS.

"Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate. Trusts created prior to the date when this act shall become a law shall not be affected hereby."

"Now, THEREFORE, IT IS MUTUALLY AGREED between the parties hereto as follows:

"There is hereby added to Article 7 on Page 4 thereof the following:

"This trust is by the trustors, hereby expressly made irrevocable."

This amendment was recognized as effective retroactively to the dates of the trust agreements by the office of the Controller of the State of California, Inheritance and Gift Tax Division, and on September 10, 1954, a notice and determination of gift tax for the year 1953 was issued to petitioners. The amendment was not so recognized by the Commissioner of Internal Revenue.

On December 1, 1954, an amendment was executed whereby Frederick L. Botsford, an attorney, became co-trustee with Miers of the three trusts. On November 7, 1958, Miers and Botsford, as trustees, and petitioners' children, through a guardian ad litem, filed a complaint in the Superior Court of the State of California against the petitioners and Robert A. Riddell, District Director of Internal Revenue,[5] seeking a declaratory judgment of plaintiffs' rights under trust agreements A and B, as amended. It was alleged that Riddell contended the trusts were revocable, refusing to recognize the amendments as effective. Defendant Riddell removed the action to the United States District Court for the Southern District of California, Central Division, where the action was dismissed as to him for lack of jurisdiction. On appeal, the dismissal was affirmed by this court. 9 Cir., Botsford v. Riddell, 283 F.2d 298.[6]

The remaining parties stipulated for remand to the Superior Court of the State of California. That court, on November 13, 1961, entered a judgment on the pleadings wherein it was

" * * * ORDERED, ADJUDGED, AND DECREED that the Trust Agreements, dated January 1, 1953, executed by the defendants Will Flitcroft and Agnes D. Flitcroft, as trustors, and by the plaintiff Richard H. Miers, as trustee, * * * be and they hereby are reformed in accordance with the express intent of the trustors and trustee so that the following sentence is added to the first paragraph of each of said Trust Agreements: 'This Trust is irrevocable.'

"IT IS FURTHER ORDERED AND DECREED that said Trust Agreements were irrevocable upon their date of execution January 1, 1953, and the respective rights and obligations of the parties arising from said agreements shall be governed accordingly."

At the trial before the Tax Court petitioner Will Flitcroft testified that it was his understanding when the trusts were executed that "it was a trust that could not be broken in ten years time". (R. 84.) Miers, the trustee, testified that it was the intention to make each of the three trusts irrevocable. (R. 193, 194.) There is no evidence of any contrary intention.

In its opinion (Footnote 1, R. 234), the Tax Court said, "The evidence here shows that the transactions were not shams, that the independent trustees controlled the trust corpus, and that petitioners recognized the trusts as partners and gave public notice of such recognition by the filing of a Certificate Of

5. Botsford had prepared the trust agreements. In the complaint verified by Botsford, it was alleged that it was intended by all parties that Article I of the trust agreement should include the sentence, "This is irrevocable"; but that the scrivener by mistake omitted to include this sentence.

6. It was held (1) that if the action was solely concerned with the reformation of the trust instruments, it would not "arise under any act of Congress providing for Internal Revenue"; and (2) that if the action involved Internal Revenue, the trustee plaintiffs were not the real parties in interest in any controversy with the defendant director and had no right to relief because the returns and payments were made by the trustors and not by the trustees.

Business Fictitious Firm Name listing the trusts as partners"; and that when the partnership agreement and trust agreements are read together, "there is clearly a transfer of the trust corpus of the two individual trusts to the trustee and the designation of the trust corpus is clear." [7]

The primary question for determination is the effect of (1) the provisions of California Civil Code § 2280, (2) the amendments to the trust agreements executed July 30, 1954, and (3) the judgment of the Superior Court of the State of California reforming trusts A and B in accordance with the express intention of the trustors and trustee, and decreeing that the trusts were irrevocable from their date of execution, January 1, 1953.

The Tax Court held that the trusts were revocable trusts under California law until their amendment on July 30, 1954; that the trusts were at no time irrevocable for a period of ten years;[8] that the trusts' income was includible in petitioners' tax income since petitioners "had a reversionary interest in the corpus at the inception of the irrevocable trusts which would take effect within ten years commencing with the date of transfer to the irrevocable trusts"; that there was no reason for the action in the Superior Court of California except for its "effect upon the Federal Tax question", and that in this limited sense the judgment of the California court was collusive and not binding upon the federal courts in determining tax liability.

It is clear that the trustors and trustee intended to create irrevocable trusts[9] in compliance with the provisions of section 673(a), IRC of 1954, and they would be so recognized except for the provision of California Civil Code § 2280. The omission of the words, "This trust is irrevocable", was not due to any oversight or misconception with respect to the provisions of the Internal Revenue Code or any other federal statute, but solely the result of overlooking the provision of the California law requiring an express recital that the trust is irrevocable. The amendment to include this provision was given retroactive recognition by the taxing authorities of California. Subsequently, trusts A and B were reformed by the California court and the trusts decreed to be irrevocable as of the date of their execution, in accordance with the intention of the parties.

The finding of the California court that the parties intended the trusts to be irrevocable from their inception is not questioned. Respondent contends, however, that the judgment was entered "at a time when the only important effect of the reformation would be on taxpayers' federal tax liability", and that it was "nothing more than a consent decree —collusive in fact—and therefore not binding on the federal courts * * *".

In the subsequent case of Mary Kent Miller, decided August 14, 1963, T.C.Memo 1963–215 (CCH Dec. 26,256 (M); Para. 63,215 Prentice-Hall Memo Tax Court Decisions) the Tax Court held that it was bound by the judgment of a

7. The motivation for the trust was set forth in the findings of the Tax Court as follows:
"Petitioners were motivated in executing the trusts for their two minor children and the partnership agreement with Miers as trustee of each of these trusts, by a desire to save taxes by a part of the anticipated partnership income being distributable to the trusts, a desire to create a separate estate for their children, a desire to have the share of the profits attributable to the two trusts remain for use in the partnership business, and a desire to interest the children in the business of the partner-

ship as they matured in years." (R. 225)

8. With respect to the amendments to the trust agreements, the Tax Court said: "Although it was stated in the amendments that the parties had always intended the trusts to be irrevocable, there was no reformation of the trusts but merely an amendment." (R. 246).

9. While there is no express finding of the Tax Court with respect to the intention of the parties when the trusts were created, the evidence is conclusive that the parties intended to create irrevocable trusts.

Texas state court which had declared a trust irrevocable for ten years from the date of its execution. The court there recognized the general rule that "a matter of state law decided by a court of competent jurisdiction in an adversary proceeding determines the rights of the parties and is, to that extent binding and conclusive with respect to tax liability"; but "where the state court judgment is obtained through 'collusion' for the purpose of avoiding tax liability, it has no binding effect on the Commissioner". The opinion continues:

> "Since the law presumes that court proceedings are regular and valid, we think in a situation like this where 'collusion' is asserted by respondent, *it is incumbent upon him to produce at least some evidence to that effect.* But here he has not done so. He merely urges us to find that there was 'no necessity or reason for the state court judgment except for its effect on the Federal tax question, and all of the parties to the state court action were undoubtedly aware of the position that respondent was going to take'. *This alone, in our opinion, is insufficient to give the State Court proceeding a collusive, non-adversary character.* Nor was it less adversary because the statutory notice of deficiency was issued prior to the State Court judgment. Obviously, it was to avoid the possibility of respondent charging that silence is evidence of clandestine collusion that the Government was invited on March 14, 1962, to either intervene or otherwise assist in the State Court action." (Emphasis added.)

Here the District Director of Internal Revenue was actually joined as a party defendant, so that he was fully aware of the state court proceedings, even though

the action against him was subsequently dismissed.

The Tax Court attempted to distinguish Miller from the instant case on the ground that the "California court judgment reforming the trust instruments and ordering that the trusts were irrevocable from their inception was held to be not binding *because it was obtained at the creator's request* and was in a limited sense collusive".[10] In both cases, however, the trustees, and not the trustors, were plaintiffs. In both the trustees and trustors were represented by independent counsel, although the actions were brought with the knowledge and consent of all parties. In both the federal taxing authorities were aware of the state court actions. The purpose of the action was the same in each case. As the Tax Court said in the Miller case: "Being unable to find the solution to its dilemma in the conflicting opinion of its counsel and the Internal Revenue Service, and needing the correct answers, the Trustee obtained them from the only source available to it, the District Court of Midland County, Texas." The trustees here resorted to the Superior Court of the State of California to determine the status of the trusts.

■ The Tax Court recognized in the Miller case that state law controls the question of revocability, saying: "The taxability to petitioner of the income received by the Trustee in 1959 and 1960 depends upon whether she, as Grantor, had the power to revoke the trust within 10 years from the date it was created. The possibility of the Trust property revesting in petitioner is a matter of State, not Federal, law. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (18 AFTR 1132) (1936); Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154 (29 AFTR 1209) (1942)."

10. It is true that in Miller, the petitioner, about two months after the Commissioner examined her income tax return, "purported to revoke the trust and demanded that the trustee distribute to her the entire principal thereof * * *." In that respect, in form at least, there was more evidence of an adversary proceeding. The Tax Court agreed with the Texas state court and construed the terms of the trust instrument as creating an irrevocable trust under Texas law.

The Tax Court in Miller concluded that its decision in George N. Spiva, 1941, 43 B.T.A. 1174, was controlling. In Spiva the petitioner and his wife had established a revocable trust, with the income payable to their three children. The wife died in 1926. In 1929 petitioner amended the trust, purporting to make it irrevocable. In 1938 the trustee corporation (of which petitioner was an officer) filed a declaratory judgment action in a Missouri state court. The named defendants, petitioner and the three beneficiaries, voluntarily appeared without service. In 1939 the Missouri state court held that the effect of the 1929 amendment was to render the trust irrevocable as of the date of the amendment in 1929. The Commissioner, however, determined that the trust was revocable during the year 1936 and that the income therefrom was taxable to the petitioner. Citing Blair v. Commissioner, supra, the Tax Court held that the character of the trust was to be determined by Missouri law and continued: "The decree of the Circuit Court of Jasper County recites that all the parties were before the court, represented by counsel or in person, that an actual controversy existed, and from the evidence adduced, found and determined that the trust was irrevocable. Since that decision has become final it can not be ignored. Freuler v. Helvering, 291 U.S. 35 [54 S.Ct. 308, 78 L.Ed. 634] * * *." 43 B.T.A. at 1177.

The Commissioner does not argue that an instrument may not be reformed retroactively under California law or that the decision of the Superior Court of California was erroneous—merely that it was "collusive", and that the reformation may not "defeat the already accrued rights of a third party—in this case the United States".

There is no dissent from the rule that a "collusive" judgment of a state court is not binding on the federal courts in determining tax liability. It is difficult, however, to reconcile all of the decisions which have determined whether particular judgments were "consent decrees" and by reason thereof collusive. Many factors must be considered in determining whether a judgment is in fact collusive, and ignoring particular factors has resulted in apparently conflicting decisions.

■■■ The mere fact that the action instituted by the trustees was not resisted by the trustors, and was to that extent a "consent" decree, does not in itself make the decree collusive. It is one factor to be considered.[11] Other factors include (1) the nature of the right determined by the state court; (2) whether the federal tax authorities have notice of the state court action; and (3) whether the state court reached the correct result.

In Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218, cited by the Tax Court in Mary Kent Miller, supra, the court pointed out that there are "at least three types of tax cases" with respect to which the effect of state decisions might be quite different. Where the state court adjudicates property rights, its decree must "be given effect, not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed. So far as those parties are concerned the law of the state is what the state court has declared and applied in their case. If the state court's judgment has binding final effect under the state law the rights of the parties can only be what the court has held them to be. It is for this reason that the federal court should not in a case of this kind make an inde·pendent examination and application of state law." (223 F.2d at 223) [12]

---

11. As the court said in Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218, 225: "But we think that the fact that the parties all favored the same result in the state court is relevant only so far as it is evidence of collusion and should not in and of itself vitiate in the federal court such conclusive effect as the state law gives to the judgment with respect to the property rights determined by it."

12. In a prior case, Commissioner of Internal Revenue v. Childs' Estate, 3 Cir., 1945,

Gallagher v. Smith was followed and clarified in three subsequent cases in the Third Circuit—Estate of Babcock v. Commissioner, 3 Cir., 1956, 234 F.2d 837; Beecher v. United States, 3 Cir., 1960, 280 F.2d 202; and Darlington's Estate v. C. I. R., 3 Cir., 1962, 302 F.2d 693. In the latter case, the court, while making allowance for "collusive proceedings" said, "We have also held squarely * * * that in order for the state court to settle conclusively the property question under state law and by that to fix the tax consequences under federal law, it is not necessary that the adjudication be the result of a contest in which one party says yes and another no." (302 F.2d at 695)

■ State law is controlling in determining the nature of the legal interests and rights which the taxpayer has in the property or income sought to be reached. The federal revenue acts designate what interests or rights shall be taxed. The rules recognizing this distinction were summarized in Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, as follows:

"Grantees under deeds, wills and trusts, alike, take according to the rule of the state law. The power to transfer or distribute assets of a trust is essentially a matter of local law. * * * Congress has selected an event, that is the receipt or distributions of trust funds by or to a grantor, normally brought about by local law, and has directed a tax to be levied if that event may occur. Whether that event may or may not occur depends upon the interpretation placed upon the terms of the instrument by state law. Once rights are obtained by local law, whatever they may be called, these rights are subject to the federal definition of taxability. Recently in

dealing with the estate tax levied upon the value of property passing under a general power, we said that 'state law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.' Morgan v. Commissioner, 309 U.S. 78, 80 [60 S.Ct. 424, 84 L.Ed. 585] (a case dealing with the taxability at death of property passing under a general power of appointment). In this case, * * * we were determining what interests or rights should be taxed, not what interests or rights had been created, and therefore applied the federal rule. * * * In this view the rules of law to be applied are those of Illinois. That state is the residence of the parties, the place of execution of the instrument, as well as the jurisdiction chosen by the parties to govern the instrument." 317 U.S. at 161–162, 63 S.Ct. at 144–145, 87 L.Ed. 154.

Neither Congress nor Treasury Regulations has established any criteria which require an express statement to create an irrevocable trust. In the absence of such criteria, the state law controls in determining the nature of the legal interests which the taxpayers had in the trust. While not conclusive, this is an important factor in determining whether the judgment of the California court was in fact collusive.

A second important factor is the fact that the federal tax authorities had notice of the state court action. As the Tax Court said in Miller, the invitation to intervene or otherwise assist in the state court action was extended to avoid the charge that "silence is evidence of clandestine collusion". The failure to give federal tax authorities notice of the proceedings in the state court was one of the factors leading to findings that

147 F.2d 368, involving the adjudication of property rights, the court had conceded that the state decree was binding upon the parties, but had held that it was not binding on the Tax Court in determining tax liability. To the extent that

Childs' Estate was inconsistent with the view that a binding state judgment adjudicating property rights must be given conclusive effect in tax cases, it was overruled.

the state court judgments were collusive in Faulkerson's Estate v. United States, 7 Cir., 1962, 301 F.2d 231, and Peyton's Estate v. C. I. R., 8 Cir., 1963, 323 F.2d 438, both cited by respondent in this case.

In both Faulkerson and Peyton, the court also concluded that the state court was wrong. In Faulkerson the court said, "It (the state court decree) reached a result contrary to Indiana law and Treasury Regulations." In the Peyton case, the court listed factors which justified the Tax Court in finding that the state probate proceeding was collusive, including the facts that the "request for interpretation was obviously pointed toward the marital deduction"; that "estate counsel acted on behalf of the widow, even though the issue placed her and the children in opposing postures"; and the "probate court's determination of the nature of the widow's interest was wrong under state law." 323 F.2d at 446.

We turn now to prior decisions of this court on which the Tax Court relied in part in reaching its conclusions that the state court judgment was collusive and the trusts revocable until their amendment.

In Gaylord v. Commissioner, 9 Cir., 1946, 153 F.2d 408, relying upon Helvering v. Stuart, supra, we recognized that "the existence of a power in the grantor to revoke or revest title in itself is to be determined from state law". In Gaylord the grantors themselves acted as trustees and "retained powers of management and control over the trust corpus as though they were absolute owners". In Gaylord, as here, the trust instruments did not expressly provide that the trusts were irrevocable. Subsequent to the tax years

in question, an instrument was executed by the trustors with the intent that it relate back to the original trust instrument and make it reflect the "claimed original intent and desire" of the trustors that the trust be irrevocable. There was no action in the state court, as here, to reform the instrument. We held that during the taxable years involved, the amending instrument could not, by process of retroactivity, defeat the effect and application of the federal tax law.[13]

Newman v. Commissioner, 9 Cir., 1955, 222 F.2d 131, involved the question of whether an order of a California state court holding an oral trust irrevocable was binding upon the Tax Court and other federal courts. It is true, as respondent argues, that we there held that, "The record justifies the conclusion that the order was in the nature of a consent decree, and was collusive in the limited and special sense that all parties joined in the submission of the issues and sought a decision which would adversely affect the tax rights of the government". The facts, however, were quite different from those presented here.[14] In effect we sustained the conclusion of the Tax Court that the order of the state court was in fact both collusive and erroneous, holding that the "circumstances shown by the record furnished substantial evidentiary support for a reasonable inference contrary to the testimony that the oral trust was expressly made irrevocable".

Wolfsen v. Smyth, 9 Cir., 1955, 223 F.2d 111, involved the validity of a claim approved by a California probate court. It was admitted that the claim presented to the probate court was barred by the statute of limitations, but appellant still

13. The Commissioner there argued that "the mere fact that the trust instrument could have been reformed or amended to state that it was irrevocable does not suffice, since it was neither reformed nor amended in the taxable year." Here the trust instruments were amended during the first of the taxable years, although the action to reform the instrument was instituted four years later.

14. The Tax Court there declined to accept the testimony of the petitioner and the trustee that they had declared the oral trust to be irrevocable when it was created and in its opinion said that "because of inconsistencies in the evidence, the presence of contradicting documents, and the inferences to be drawn from the whole record, it was obliged reluctantly to conclude 'that the spoken word must yield to the documented conclusion that no irrevocable oral or written trust existed'."

contended that the allowance of the claim by the probate court was a binding determination upon the United States. We sustained the finding of the trial court that the claim "was unenforceable under the laws of the state of California" and also relied upon a Treasury Regulation which provided that a local court's decision would ordinarily be accepted, but that "it must appear that the court actually passed upon the merits of the case", and that the "decree will not be accepted if it is at variance with the law of the state * * * ".[15]

While there is language in both Newman v. Commissioner and Wolfsen v. Smyth which supports respondent's position here, both cases are factually distinguishable from the instant case, since there was evidence in each of those cases that the decree of the state court was in fact collusive, was erroneous, and was obtained without notice to the federal tax authorities.

Respondent also contends that the retroactive reformation could not defeat the "accrued rights" of the United States.[16]

Section 3399 of the California Civil Code provides:

"When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

In construing this section in Baines v. Zuieback, 1948, 84 Cal.App.2d 483, 191 P.2d 67, 72, the court said: "The rights referred to are rights acquired by a bona fide purchaser for value from one of the parties to the instrument sought to be reformed after the execution of the instrument."

Respondent argues that section 3399 is not applicable because it refers to a "written contract", and the voluntary trusts in this case are not written contracts.[17] The California courts, however, have recognized a trust agreement of this nature as a contract. See In re Bodger's Estate, 1955, 130 Cal.App.2d 416, 279 P.2d 61, 67, an action involving a trustee's compensation, where the court said:

"A declaration of trust constitutes a contract between the trustor and the trustee for the benefit of a third party. The trustor declares that he will transfer certain property to a trustee if the trustee agrees to use and dispose of the property and its proceeds in a manner designated by the trustor for the benefit of third parties. There is in this situation an offer by the trustor and an accept-

15. Treasury Regulation 105 § 81.30.

16. Respondent's position finds support in M. T. Straight's Trust v. Commissioner of Internal Revenue, 8 Cir., 1957, 245 F. 2d 327, although that case is factually distinguishable. A trust had been created for three beneficiaries. The Commissioner had required that it be taxed as a unit. Thereafter the trustor brought a proceeding in state court, wherein a decree was rendered, nunc pro tunc, reforming the instrument to create three separate trusts. The court called attention to the fact that "[n]either the Commissioner nor any governmental officer or agency" was made a party to the proceeding; and in holding that the state court decree was not binding upon the Government said: "The reformation of instruments is purely an equity remedy and its every application must lead to equitable results. We think that it is both inequitable and beyond the power of a State Court to change retroactively the status of a federal revenue measure with a resulting loss of revenue to the government." 245 F.2d at 329.

17. In support of this contention, respondent relies upon language in Gaylord v. Commissioner of Internal Revenue, supra. In Gaylord, however, the grantors and trustees were the same persons, and there was no diversity of parties. We held against the taxpayers' contention that the trust was a "contract between the taxpayers, the two trustors and trustees, as between themselves and with respect to the designated beneficiaries". We did not hold that a trust agreement between different parties is not a contract.

ance by the trustee. The mutual consent of the parties to the express declaration of trust constitutes a contract between them, each having rights and obligations which may be enforced by the other and by the beneficiary designated in the contract.

"This legal situation is recognized by section 2218 of the Civil Code which reads as follows:

"*'Parties to the contract.* The person whose confidence creates a trust is called a trustor; the person in whom the confidence is reposed is called the trustee; and the person for whose benefit the trust is created is called the beneficiary.'

"In legal contemplation a declaration of trust is nothing other than a third party beneficiary contract. \* \* \*"

It cannot be said here that the United States acquired intervening rights for value. Nor was there any attempt to change retroactively the status of a federal revenue measure. The Internal Revenue Code did not attempt to define the respective rights of the trustor and trustee. If the trust were revocable under state law, the tax was payable by the trustor; if irrevocable, by the trustee. Insofar as the trust agreement is concerned it would be recognized as an irrevocable trust, except for the provision of the California code. The California court has held that it was the intention of the parties to create an irrevocable trust and the failure to do so was the result of a mistake. As was said in Gallagher v. Smith, supra, the adjudication of the state court is given effect, "not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed."

 It is our conclusion that the state court was correct in finding that it was the intention of the parties to create irrevocable trusts from their inception; that the decree of the state court adjudicated property rights and should be given effect in the federal courts; and that the decree of the state court was not in fact collusive, particularly in view of the fact that the District Director of Internal Revenue had full knowledge of the state court proceedings, having been joined initially as a party in that action.

The judgment of the California court related to Trusts A and B and did not include Trust C. Initially the income of Trust C (60 percent of the rental paid by the partnership for the use of the realty) was attributed to petitioners because the Commissioner disallowed the partnership's claimed rental deduction, contending that the rent was not a proper business expense of the partnership.

This position was subsequently abandoned by the Commissioner, and it is now contended that the income of Trust C, like that of Trusts A and B, is properly included in petitioners' income because that trust also fails to meet the ten year irrevocable test. It is not entirely clear just when the Commissioner changed his position, but it does appear that the change was recognized by the Tax Court.[18]

██ Insofar as the Commissioner's present contentions are concerned, Trust C is in effect in the same position as Trusts A and B, except that it was not reformed by the judgment of the California court. It cannot be doubted that if Trust C had been involved in the state court action, it would have been reformed retroactively as were Trusts A and B. The determination of whether Trust C, like Trusts A and B, was irrevocable from its inception involves the adjudication of property rights and the application of state law. The state court having expressly found with reference to Trusts A and B that it was the intention of the parties to make irrevocable trusts and that the trusts were irrevocable from the

---

18. The opinion of the Tax Court notes that the question is "whether the partnership income reported by the *three* trusts" is taxable to petitioners because of the provisions of California law. (Emphasis added.) (R. 234.)

date of their execution, it follows that the same treatment must be accorded Trust C.

Judgment reversed and remanded for further proceedings consistent with this opinion.