**UNITED STATES of America,**
**Plaintiff,**
v.
**Leone BOSURGI et al., Defendants.**
**No. 71 Civ. 928.**

United States District Court,
S. D. New York.

Feb. 25, 1975.

See also, D.C., 343 F.Supp. 815.

Paul J. Curran, U. S. Atty., for plaintiff, by David P. Land, Asst. U. S. Atty., of counsel.

Benedict Ginsberg, pro se.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for defendant Sociedad Anonima de Inversiones Comerciales e Industriales ("SAICI"), by Samuel Gottlieb, Alan C. Krieger, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for defendant Chemical Bank New York Trust Co., by Andrew Tashman, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The United States of America (hereinafter "United States"), Chemical Bank New York Trust Company (hereinafter "Chemical Bank"), Benedict Ginsberg (hereinafter "Ginsberg" and the Sociedad Anonima de Inversiones Comerciales e Industriales (hereinafter "SAICI") have each moved for summary judgment in this tax proceeding.[1] The United States, as plaintiff in this action, is attempting to obtain a judgment for the federal taxes allegedly due from the estate of Adriana Bosurgi, an Italian citizen and non-resident alien of the United States. The original defendants herein were Chemical Bank and Leone and Emilio Bosurgi, the sons of Adriana Bosurgi. SAICI and Ginsberg were later added as defendants.

This action is intimately related to two earlier lawsuits in New York State courts involving the same parties (except for the United States). In 1966, Ginsberg was retained by the Bosurgi brothers to sue Chemical Bank for alleged mismanagement of a custodian account at Chemical Bank which had been opened by their mother in 1954, and which was maintained in their names after her death in 1963. The suit was filed in 1966, and on September 15, 1970, a stipulation settling the suit for $215,000 was dictated into the record in open court. However, before Chemical Bank paid any money to the Bosurgis, this suit was instituted on March 2, 1971. Shortly thereafter this Court entered an order, dated March 18, 1971, that required Chemical Bank to pay

$215,000 to Ginsberg, who was to hold the amount in escrow pending further order of this Court. Then in June 1971, another suit was instituted in the State courts. This one involved a claim by SAICI that the funds involved in the other State court suit belong to SAICI and that the Bosurgi brothers were holding those funds in trust for SAICI's benefit. That suit was ultimately consolidated with the Bosurgis' action against Chemical Bank.[2] On December 12, 1973, the State court found that the Bosurgis held the assets in the Chemical Bank account as trustees for SAICI and that SAICI was entitled to the $215,000 settlement. It further ordered that the $215,000 was subject to a "retaining lien" in favor of Ginsberg for his services as an attorney. The Court set the amount of Ginsberg's fees at $68,080.37 plus 35% of all accrued interest to the date of payment plus his unreimbursed disbursements of $994.05.

Three issues are raised by the summary judgment motions:

1) Does the State court ruling that the Bosurgis held the funds in Chemical Bank as trustees for SAICI bind this Court?

2) If not, did the Bosurgis hold the funds as trustees for SAICI?

3) Is the fee awarded to Ginsberg appropriate and should he be allowed to collect it now?

## I. BINDING EFFECT OF STATE COURT JUDGMENT

■ Although the United States was fully aware of the State court proceedings and informally participated therein, it was not a formal party therein.[3] In

---

1. Although the United States has not withdrawn its motion for summary judgment, it has submitted an affidavit suggesting that there is a genuine issue of material fact involved herein that requires a trial. Specifically, it suggests that the State court proceedings discussed herein may have been collusive against the interests of the United States.

2. The Supreme Court initially refused to consolidate the cases, but it was later or-

dered to do so by the Appellate Division. 43 A.D.2d 519, 344 N.Y.S.2d 75.

3. I am not unmindful of the fact that the United States Attorney was represented at a conference held before the State Court Justice and that the United States addressed letters to the State court indicating its view of the proceedings. However, I am not persuaded that the United States had such a "laboring oar in the controversy" so as to consider it a formal party. See Drummond

somewhat similar circumstances the United States Supreme Court has indicated that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should . . . not be controlling." Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The Court held that in such circumstances a federal court should give "proper regard" to the rulings of the State court. It concluded that such an approach "would be fair to the taxpayer and protect the federal revenue as well." 387 U.S. at 465, 87 S.Ct. at 1783.[4]

In determining the proper regard to be given the State court proceedings in this particular case, I note that the judgment entered was not a default judgment, but rather was entered on the basis of a motion for summary judgment. Furthermore, I do not believe that the State court proceedings were in any way collusive as has been suggested by the United States. In making this suggestion, the United States relies principally on the fact that SAICI did not commence its State court action until it appeared that the Bosurgis' $215,000 recovery from Chemical Bank might be subject to federal estate tax liability. I find this argument unpersuasive. There was no reason for SAICI to be concerned about these proceedings until such tax liability was asserted. Up to that point the Bosurgis had adequately represented SAICI's interest. Not until this action was instituted was it important for SAICI to establish that it was the owner of this fund.

The government also argues that the failure of the Bosurgis to appear in this action demonstrates collusion. I fail to see why. Since the Bosurgis were suddenly faced with the assertion of a substantial federal tax liability ($650,000 plus), they may well have wanted to avoid further connection with this litigation and thus leave it to SAICI to vindicate its interest.

If the government seriously desires to suggest collusion, it must produce some evidence to that effect. Flitcroft v. Commissioner, 328 F.2d 449, 454 (9th Cir. 1964). It has failed to do so here. Indeed, in discussing the factors to be considered in determining whether there was collusion in the State court proceedings involved in *Flitcroft*, two of the factors listed by the Ninth Circuit were "whether the federal tax authorities have notice of the state court action; and whether the state court reached the correct result." 328 F.2d at 455. I will discuss the latter issue in part II, but as to the question of notice, the United States certainly had notice of the State court proceedings in this case; the parties in the State court seemed anxious to have the government join in that proceeding. I conclude that the State court proceedings were not collusive.[5]

Thus, there is no reason not to give proper regard to the State court proceedings herein. Indeed, since such interests as judicial economy are enhanced by allowing competent State tribunals to decide issues of State law, see Klein v. Walston Co., 432 F.2d 936, 937 (2d Cir. 1970), I think that it is proper here to give considerable weight to the fact that the state court has found that SAICI is the owner of the funds in the Chemical Bank account. See Miglionico

v. United States, 324 U.S. 316, 318, 65 S.Ct. 659, 89 L.Ed. 969 (1945).

4. See Cheng Yih-Chun v. Federal Reserve Bank of N. Y., 442 F.2d 460, 463 (2d Cir. 1971).

5. The extent to which the United States is grasping at straws in order to avoid the consequences of its refusal to walk across the street to the New York County Courthouse is seen in its allegation that collusion is indicated by the failure of SAICI and Ginsberg to serve the record and their briefs on the United States when they appealed in the State court proceeding. In making this argument, the government fails to admit that it had received their notices of appeal and that it attempted to file a letter-brief with the Appellate Division.

v. United States, 323 F.Supp. 197 (N.D. Ala.1971).[6]

## II. WAS SAICI THE REAL OWNER OF THE BOSURGIS' ACCOUNT AT CHEMICAL BANK

■ The State court found that the money on deposit with Chemical Bank was held by the Bosurgis for the benefit of SAICI. That decision was based on documentary evidence submitted by SAICI on its motion for summary judgment. Ginsberg, on behalf of the Bosurgis, admitted that the documents were genuine. They consisted of a trust instrument signed in 1954, which indicated that the Bosurgis were to maintain an account in New York for the benefit of SAICI and various pieces of correspondence dated between 1955 and 1962, from the Bosurgis to SAICI in which the Bosurgis acknowledged that the New York account was held for SAICI's benefit.[7]

As counter evidence the United States offers uncontested documentary evidence as follows:

First, that there was no indication given to Chemical Bank that the account was other than a personal account.

Second, that the income taxes paid on dividends paid into the account were paid by Mrs. Bosurgi.[8]

Third, that the income taxes on the account should have been paid at a rate of 30%, rather than the 15% actually paid, if SAICI was the owner of the account.[9]

Fourth, that the financial statements of SAICI, filed with the Uruguayan government, do not list the trust account as an asset.

These four factors do not deny the existence of a trust agreement in any way. At best they establish that SAICI may be a secretive organization (the trust agreement recites that the persons behind SAICI desired to keep secret their participation in financing a joint venture with the Bosurgis) and that there may be some liability to the United States (and perhaps Uruguay) for income taxes.

In looking at the evidence before the State court, the United States notes that the fact that the Bosurgi account was opened some months before the trust agreement was purportedly signed is evidence that there was no such agreement. However, the trust agreement recites that it is a confirmation of an earlier oral agreement.

■ While the government quibbles about the authenticity of the evidence before the State court, five members of the Appellate Division of the New York Supreme Court found it sufficient to order the State trial court to enter summary judgment on SAICI's behalf. I

---

6. In its argument that this Court should ignore the State court proceedings, the government suggests that the State court could not act because of this Court's order of March 18, 1971. I disagree. That order simply directed Ginsberg to hold the fund in escrow until further order of this Court. The order in no way indicated that the then pending State court proceedings should be stayed. The New York courts could and did determine which of the parties before it was the owner of the account at Chemical Bank. The United States is not bound by that decision in this proceeding, but I will give proper regard to the State court decision pursuant to *Bosch.*

7. The United States suggests that these facts cannot be considered because they are not within the personal knowledge of SAICI's attorney, who filed the only affidavit in this Court in support of SAICI's motion for summary judgment. See Fed.R.Civ.P. 56(e). I find it sufficient that these facts are in the record of the State court proceedings which is before this Court.

8. The government does not offer any tax returns filed by Mrs. Bosurgi, but rather submits Chemical Bank's Form 1042S Return showing the name of the owner of the account, its income and the tax withheld.

9. The difference is attributable to the existence of a tax treaty with Italy, but not with Uruguay.

have already indicated that I feel that considerable regard should be given to the decisions of the State court in this case. Since the government fails to offer any convincing evidence that controverts the existence of a trust, SAICI's motion for summary judgment should be granted.

### III. ATTORNEYS' FEES

Since the Chemical Bank account was the property of SAICI,[10] it is not subject to any federal estate tax liability. Thus this Court has no further interest in this suit. The possibility of estate tax liability having been eliminated, there is no basis for continuing the order requiring Ginsberg to hold the $215,000 in escrow. The dispute between Chemical and Ginsberg as to when the State court stipulation permits payment of Ginsberg's fees is a matter for determination in the State courts.

1. SAICI's motion for summary judgment is granted and the complaint against it is dismissed.

2. The United States' motion for summary judgment is denied.

3. Ginsberg's motion for summary judgment is granted in so far as the complaint against Ginsberg is dismissed.

4. Chemical Bank's motion for summary judgment is granted and the complaint against Chemical Bank is dismissed.

5. The order of this Court dated March 18, 1971, setting up the escrow account in this matter, is vacated.

6. The default judgment against the Bosurgis (*in rem*) is vacated.[11]

So ordered.

---

10. The trust documents before the State court indicate that the entire account was the property of SAICI and the State court so held.

---

11. This disposition moots the issue of whether discovery should go forward.