**UNITED STATES of America, Plaintiff,**

v.

**Leone BOSURGI and Emilio Bosurgi, as Executors of the Estate of Adriana Bosurgi, Deceased; Chemical Bank, as Statutory Executor of the Estate of Adriana Bosurgi, Deceased; Leone Bosurgi and Emilio Bosurgi; Sociedad Anonima de Inversiones Comerciales e Industriales and Benedict Ginsberg, Defendants.**

**No. 71 Civ. 928 (KTD).**

United States District Court, S. D. New York.

Dec. 12, 1979.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for plaintiff; Frederick P. Schaffer, Asst. U. S. Atty., New York City, of counsel.

Hertzog, Calamari & Gleason, New York City, for defendant Chemical Bank; Peter E. Calamari, New York City, of counsel.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for defendant Sociedad Anonima de Inversions Comerciales e Industriales.

Benedict Ginsberg, pro se, for defendants Leone Bosurgi and Emilio Bosurgi.

OPINION

KEVIN THOMAS DUFFY, District Judge:

This case has a long and tortured history, much of which is set forth in *United States v. Bosurgi,* 530 F.2d 1105, 1112 (2d Cir. 1976). The suit was originally commenced by the United States against Leone and Emilio Bosurgi [hereinafter collectively referred to as the "Bosurgis" or "the Bosurgi brothers"], individually and as Executors of the Estate of Adriana Bosurgi and against Chemical Bank, as the Statutory Executor of the Estate of Adriana Bosurgi to recover estate taxes allegedly due upon the Estate of Adriana Bosurgi. Apparently, the only assets located within the United States to pay these estate taxes were those repre-

---

sented by a custodian account in the name of Adriana Bosurgi managed by Chemical Bank. When she, died, the account was transferred to the names of her two sons, Leone and Emilio. Shortly thereafter, Benedict Ginsberg was retained as the Bosurgi brothers' attorney to bring suit in New York State Supreme Court against the bank for damages caused by its alleged mismanagement of the custodian account. That action was settled in September, 1970 by the bank's promise to pay the Bosurgis $215,000.

Thereafter, in 1971, the instant suit for taxes assessed against the Bosurgi estate was instituted and an order entered restraining the bank and the Bosurgis from transferring the funds. The order was later modified to permit Ginsberg, as custodian of the $215,000, to invest in certificates of deposit. Benedict Ginsberg and the Estate of Adriana Bosurgi were added as defendants by Chemical Bank's answer.

During the pendency of this action and despite the Southern District's custody of the $215,000, Sociedad Anonima de Inversiones Comerciales e Industriales [hereinafter referred to as "SAICI"] brought suit in the Supreme Court, New York County against the Bosurgis and Ginsberg. Based on a December 10, 1954 financing agreement between Adriana Bosurgi, the Bosurgi brothers and SAICI, the latter claimed ownership of the fund in the federal court's custody.

In response to SAICI's summary judgment motion in the State Court, Ginsberg filed an October 12, 1973 affidavit indicating that the Bosurgis conceded the existence of the December 10th agreement and, consequently, could not oppose SAICI's motion. He did, however, oppose the motion only insofar as he sought an order requiring payment of his $78,491 fee.[1]

Although unopposed, SAICI's motion was denied by the New York Supreme Court because the federal court had jurisdiction over the res. On appeal the Appellate Division, Second Department, reversed, granting SAICI's request for summary judg-

ment. In so doing, the Court stated that the federal government's tax lien on the fund would not be effected.

Relying heavily on the decision of the Appellate Division, I later granted SAICI's motion for summary judgment in the federal action. *United States v. Bosurgi*, 389 F.Supp. 1088 (S.D.N.Y.1975). The Court of Appeals disagreed and directed that the matter proceed to trial.

It is imperative to note that in reversing the grant of summary judgment, the Court of Appeals expressly held that the decision of the Appellate Division was not binding on the parties in the federal action. Indeed, the Court reasoned that

Since the federal court first assumed jurisdiction over the $215,000 fund, the ownership of which is in dispute, economy of judicial resources and avoidance of conflicting results would not appear to be served by giving controlling effect to the later adjudication of another court which did not have control over the fund. However, we need not resolve that issue; even if due regard is accorded to the state court's adjudication, *see Commissioner v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), it would be only as valid as its evidentiary base. We have not hesitated to disregard state court judgments affecting federal tax liability where the factual questions involved were not contested in the state court, *see Lowe v. Commissioner*, 510 F.2d 479 (2d Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975) or where a lower state court made an erroneous application of state law, *see Cheng Yih-Chun v. Federal Reserve Bank*, 442 F.2d 460 (2d Cir. 1971). Here also there are sound reasons for not adhering to the Appellate Division's decision. SAICI's motion for summary judgment in the state court action was unopposed. The state court, basing its decision on an attorney's hearsay affidavit regarding the authenticity of the Bosurgi-SAICI correspondence, did not have before it the

---

1. The United States did not appear in this State Court action.

conflicting evidence submitted in the federal suit by the government, which was not a party to the state court proceeding. The additional evidence raises a clear issue regarding the ownership of the Chemical Bank account. Under the circumstances, the state court's decision, even given proper regard, did not necessitate a federal grant of summary judgment. (footnote omitted)

*United States v. Bosurgi*, 530 F.2d 1105, 1112 (2d Cir. 1976).

In the face of this holding by the Second Circuit, SAICI still takes the audacious position that it will not in any way permit discovery with respect to the factual issues which were remanded to this Court for trial. In order to prepare for trial, the United States has continually attempted to obtain information through the ordinary discovery processes.

First, the government served SAICI with interrogatories and a request for documents on October 12, 1976. A motion to compel answers thereto was denied without prejudice to its renewal after compliance with Rule 9(f) of the general rules of this Court which requires that the parties confer as to these matters prior to making such protective motions. The necessary conference was held at which counsel for SAICI promised to answer most of the interrogatories and produce most of the documents requested. On December 22, 1977, plaintiff again moved for an order compelling answers to the interrogatories and the documents requested. That motion was referred to Magistrate Leonard Bernikow. SAICI finally served and filed what purported to be its answers to interrogatories and requested documents. As the government felt such answers were "so incomplete as to be worthless", a hearing was held before Magistrate Bernikow on May 4, 1978, at which the Magistrate directed that SAICI "answer within thirty days, fully and completely, the interrogatories as set forth."

On June 2, 1978 the plaintiff, the United States, received SAICI's answers to interrogatories. With the exception of one affidavit, SAICI failed to produce a single document requested by the plaintiff and most of the answers were deficient. The plaintiff renewed its motion for sanctions under Rule 37 of the Federal Rules and another hearing was held before Magistrate Bernikow.

Thereafter, on October 23, 1978, Magistrate Bernikow filed a memorandum and order in which he found that "[a] review of the answers to the interrogatories show that they are evasive, incomplete and unresponsive. Moreover, with the exception of one affidavit, no documents were produced in response to the document request." The Magistrate further held that the failure of SAICI had been wilfull and precluded SAICI from offering into evidence any of the documents indicating the origin of its claim for the moneys involved herein.

Meanwhile, a notice to take the deposition of SAICI scheduled for October 5, 1978 was served and filed. In turn, SAICI sought an order directing an immediate trial and for a stay of any and all pretrial proceedings pending such determination. By Memorandum dated November 7, 1978, the protective order and request for immediate trial were denied. I ordered SAICI to appear and testify at a properly noticed deposition. Apparently, neither counsel for the United States nor counsel for SAICI learned of this order until the end of May, 1979. On May 30, 1979, a new and proper notice to take SAICI's deposition on June 25, 1979, was served. By letter dated June 22, 1979, SAICI's counsel advised that no representative of SAICI would appear at the deposition. Counsel also indicated that the refusal was based, in part, on the fact that the Order of November 7, 1978, had been entered prior to the time a reply memorandum had been filed in support of SAICI's motion for a protective order. SAICI's counsel also requested a conference in connection with this matter.

On July 27, 1979 the plaintiff, the United States of America, moved for "further sanctions" against SAICI pursuant to Fed.R. Civ.P. 37(b)(2) and (d). Thereafter, oral argument was had in connection with this motion and counsel for SAICI was given

the opportunity to reply to the motion in writing. This was filed August 23, 1979.

SAICI continues to argue that a State Court judgment against the Bosurgis is binding upon the United States and forecloses all discovery. In view of the holding by the Circuit Court, there is absolutely no basis to this argument. A secondary argument advanced by SAICI is that the government can obtain its State taxes from other funds held by the Bosurgis or from the Chemical Bank. There does not appear to be any basis for this argument since the Bosurgis apparently have no assets located in this country. As for Chemical Bank, release of the assets would require a relitigation of the ownership of the account held in the name of Adriana Bosurgi, precisely what SAICI is unwilling to permit in this suit.

It is clear to this Court that the position taken by SAICI refusing to permit discovery is one which will not change by the imposition of further sanctions other than the most drastic sanction. Accordingly, the answer of SAICI is stricken in its entirety and a default judgment against SAICI will be entered on behalf of the United States.

Settle judgment on five days notice.