750 F.2d 216
 UNITED STATES of America, Plaintiff-Appellee,
v.
Leone BOSURGI and Emilio Bosurgi as Executors of the Estate
of Adriana Bosurgi, Deceased, and Chemical Bank as Statutory
Executor of the Estate of Adriana Bosurgi, Deceased, and
Leone Bosurgi and Emilio Bosurgi, Defendants,
Chemical Bank, as Statutory Executor of the Estate of
Adriana Bosurgi, Defendant-Appellee-Cross-Appellant,
Estate of Adriana Bosurgi, Deceased, and Benedict Ginsberg,
Additional Defendants to Counterclaim and Cross
Claim for Interpleader,
Benedict Ginsberg, Additional Defendant to Counterclaim and
Cross Claim for Interpleader-Appellant-Cross-Appellee.
 Cal. Nos. 60, 183, Dockets 84-6027, 84-6031.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 28, 1984.
Decided Dec. 12, 1984.
 
 Eliot H. Lumbard, New York City (Patricia J. Murphy and Lewis W. Siegel, New York City, on the brief), for defendant-appellant-cross-appellee Ginsberg.
 William Simon, New York City (Hertzog, Calamari & Gleason, New York City, on the brief), for defendant-appellee-cross-appellant Chemical Bank.
 William J. Brennan, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., Leona Sharpe Chamberlin and Jane E. Booth, Asst. U.S. Attys., S.D.N.Y., New York City, on the brief), for plaintiff-appellee.
 Before VAN GRAAFEILAND, WINTER and PRATT, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This case comes to us by appeal and cross appeal from so much of an order of the United States District Court for the Southern District of New York (Duffy, J.) as awarded a charging lien to Benedict Ginsberg for legal services on behalf of Leone and Emilio Bosurgi in a State court action against Chemical Bank and directed the distribution between Ginsberg and the IRS of the settlement proceeds of that action. The dispute may be summarized rather simply. Ginsberg says he was not paid enough. The Government says that he was. Chemical argues that Ginsberg should not have been paid at all, but agrees with the Government that the payment as made was adequate.
 
 
 2
 The historical background of the dispute may be found in opinions already published. See United States v. Bosurgi, 530 F.2d 1105 (2d Cir.1976); United States v. Bosurgi, 84 F.R.D. 668 (S.D.N.Y.1979), aff'd mem., 633 F.2d 206 (2d Cir.), cert. denied, 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980); United States v. Bosurgi, 389 F.Supp. 1088 (S.D.N.Y.1975); United States v. Bosurgi, 343 F.Supp. 815 (S.D.N.Y.1972). For our purposes, therefore, a brief summary of the facts will suffice.
 
 
 3
 In 1954 Adriana Bosurgi, an Italian national, opened a custodian account at Chemical. In 1963 Mrs. Bosurgi died, and the account was transferred to her two sons, Leone and Emilio. In 1966 the sons, represented by Ginsberg, sued Chemical in New York State Supreme Court for alleged misuse of deposited securities. This action was settled in 1970 for $215,000. Because the IRS then was making a claim against Chemical for unpaid taxes on Mrs. Bosurgi's estate, the settlement agreement provided that Ginsberg was to hold the settlement proceeds in escrow pending determination of the IRS claims.
 
 
 4
 In 1971 the Government commenced this action against Chemical and the Bosurgis to collect the unpaid taxes and to foreclose its tax lien on the escrow funds. The Bosurgis, who reside in Italy, did not answer, and an in rem judgment was entered against them by default. Sociedad Anonima De Inversiones Comerciales E Industriales ("SAICI"), a Uruguayan company, and Ginsberg later were added as defendants. SAICI was added because it had brought suit in State court contending that it was the owner of the fund in the Chemical account; Ginsberg was added because he had a claim for attorney's fees. On SAICI's appeal from a State court ruling rejecting its claim of ownership, the Appellate Division, First Department, reversed, directing that summary judgment be entered in favor of SAICI and remanding to the trial court for a hearing to fix the amount of Ginsberg's fee. Sociedad Anonima De Inversiones Comerciales E Industriales v. Bosurgi, 43 A.D.2d 519, 349 N.Y.S.2d 75 (1st Dep't 1973) (mem.). Thereafter, the State trial court awarded Ginsberg a lien against the escrow fund in the amount of $68,080.37 plus 35% of the accrued interest on the fund and $994.05 in disbursements.
 
 
 5
 Following entry of the State court judgment, the United States, Chemical, SAICI and Ginsberg each moved for summary judgment in this action. The Government's motion was denied; the defendants' motions were granted. 389 F.Supp. 1088. On appeal, this Court held that neither side was entitled to summary judgment and remanded to the district court for further proceedings. 530 F.2d 1105. We also directed the district court to "fix the amount of Ginsberg's priority lien for attorney's fees after hearing any evidence presented by the interested parties." Id. at 1113 n. 8.
 
 
 6
 Thereafter, the district court struck SAICI's answer because of its refusal to comply with discovery orders and directed that judgment by default be entered in favor of the Government. 84 F.R.D. 668. The district court then ordered that the escrow funds be paid to the Government, except for Ginsberg's charging lien which the court fixed in the amount of $113,154.38. On January 18, 1984, Ginsberg directed the Chase Manhattan Bank, custodian of the escrow funds, to pay $534,183.37 to the United States and to retain the balance of $114,122.35 ($113,154.38 plus $967.97 in interest that had accrued since the district court's order) in his account. The present appeal focuses on the propriety of this retention.
 
 
 7
 At the outset, we disagree with Chemical's contention that the escrow provision in the 1970 settlement agreement precluded the district court from awarding this money to Ginsberg as his attorney's lien. In 1971, when the United States sued to foreclose its lien against the settlement fund, District Judge Bonsal ordered that the money be paid to Ginsberg and held by him in escrow subject to the Government's liens and any further order "with regard to the rights of the United States of America and any other claimant to the said $215,000." From that time on, the settlement funds were under the jurisdiction and control of the district court. 530 F.2d at 1112. When that court later held that the Government's tax lien was valid and enforceable, the 1970 stipulation requiring Ginsberg to hold the funds pending determination of the IRS claims became a dead letter--the Government was entitled to the money. However, on the prior appeal to this Court, 530 F.2d 1105, the Government conceded that Ginsberg had a prior lien and the right to be paid out of the same funds. See 26 U.S.C. Sec. 6323(b)(8). The Government's sole contention was that the amount of Ginsberg's lien had to be fixed by the district court. This has been done pursuant to this Court's mandate which is the law of the case. If the Government is content, as it is, to recognize Ginsberg's lien, there is nothing in the 1970 settlement agreement that requires Ginsberg to forfeit that lien.
 
 
 8
 There is no merit in Chemical's contention that, because the Government has a valid claim to the entire settlement proceeds by virtue of its tax lien, Ginsberg has recovered nothing on behalf of his clients so as to entitle him to an attorney's lien. It is against Ginsberg's recovery for his clients that the Government has imposed its lien. The clients will receive credit for the amount of the Government's recovery in the event that liability hereafter is imposed upon them for unpaid taxes on their mother's estate.
 
 
 9
 Because satisfaction of Ginsberg's lien has been delayed for so long, the dispute over the amount of Ginsberg's lien award is somewhat more troublesome. When Magistrate Bernikow, to whom Judge Duffy referred consideration of the award, began his inquiries, he discovered that Ginsberg had not kept time records. Attempting to reconstruct the amount of time he had spent on his clients' behalf, Ginsberg arrived at a total of 1076 hours. Magistrate Bernikow reduced this to 557.25 hours. Ginsberg also claimed 112 hours for the work of an employee. The magistrate allowed 64 hours. Magistrate Bernikow then computed the amount of Ginsberg's lien on the basis of current rates. Allowing Ginsberg $200 per hour and the employee $125 per hour, the magistrate arrived at a total of $119,450.[1]
 
 
 10
 The district court, feeling bound by this Court's decision in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1152-53 (2d Cir.1983), held that the award should have been based on historic rather than current rates. The court did not, however, order a hearing as to the rates that prevailed in the sixties. Relying primarily on its own knowledge, the district court fixed the rate for Ginsberg at $125 per hour and for his employee at $75.00 per hour. With these figures as a basis, the court fixed Ginsberg's lodestar award at $75,436.25. It then applied a multiplier of 1.5 "to compensate for the delay in payment" and awarded Ginsberg a total of $113,154.38.
 
 
 11
 Ginsberg asks this Court to accept all of the district court's computations except the 1.5 multiplier. He contends that, in place of the 1.5 multiplier, this Court should add to the lodestar award that portion of the total earnings of the $215,000 escrow account that is allocable to the $75,436.25 lodestar figure. He computes this to be $152,026.67. Since the district court already has added $37,718.13 to Ginsberg's lodestar figure, Ginsberg asks this Court to direct the United States to pay him an additional $114,308.54. For the reasons that follow, we decline to do so.
 
 
 12
 In the first place, it appears that the district court was somewhat generous in fixing $125 per hour as the prevailing rate for partners and $75 per hour as the prevailing rate for associates during the period from 1965 to 1971. See, e.g., Paolillo v. American Export Isbrandtsen Lines, Inc., 305 F.Supp. 250, 253 (S.D.N.Y.1969) ($60 per hour for senior partner); Trans World Airlines, Inc. v. Hughes, 312 F.Supp. 478, 484 (S.D.N.Y.1970), modified on other grounds, 449 F.2d 51 (2d Cir.1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973) ($75 per hour for "mix" of partners and associates); In re Continental Vending Machine Corp., 318 F.Supp. 421, 426-27 (E.D.N.Y.1970) ($50 per hour for senior partner, $35 per hour for litigation partner, $20 to $25 per hour for associates); Blank v. Talley Industries, Inc., 390 F.Supp. 1, 5 (S.D.N.Y.1975) ($100 per hour for partners, $50 per hour for associates); Kane v. Martin Paint Stores, Inc., 439 F.Supp. 1054, 1056 (S.D.N.Y.1977), aff'd mem., 578 F.2d 1368 (2d Cir.1978) (1971 rate, $100 per hour for partner, $35 to $65 per hour for associates).[2]
 
 
 13
 In the second place, the district court did not take into account the fact that Ginsberg's clients had paid him $17,500 as a retainer. Application of Ginsberg's charges against this retainer at a rate of $125 per hour would have reduced his lienable hours by approximately one-fourth; at a more realistic rate the reduction would be even larger.
 
 
 14
 In the third place, because Chemical was not to blame for the thirteen-year delay in Ginsberg's recovery under his lien, it is unlikely that New York would penalize Chemical for the delay. Section 475 of New York's Judiciary Law defines the extent of Ginsberg's entitlement. Markakis v. The S.S. Mparmpa Christos, 267 F.2d 926, 927 (2d Cir.1959); United States v. J.H.W. & Gitlitz Deli & Bar, Inc., 499 F.Supp. 1010, 1013-15 (S.D.N.Y.1980). Chemical could not authorize Ginsberg to satisfy his section 475 lien out of the funds in the escrow account without the consent of Ginsberg's clients and the United States or an adjudication to which they were parties. See Oishei v. Pennsylvania Railroad Co., 101 A.D. 473, 474-75, 91 N.Y.S. 1034 (1st Dep't 1905). Under such circumstances, it does not appear that the New York courts would permit Ginsberg to recover interest for the intervening years to the detriment of Chemical which seeks credit for the net payment to the United States. See Morgan v. Onassis, 5 N.Y.2d 732, 177 N.Y.S.2d 714, 152 N.E.2d 670 (1958) (per curiam).
 
 
 15
 Finally, we note that after Magistrate Bernikow, using current rates, fixed the value of Ginsberg's lien at $119,450, Ginsberg asked the district court to adopt the magistrate's Report and Recommendation insofar as it determined the amount of his lien. In contrast, he now asks this Court to fix his fee at $227,462.92.
 
 
 16
 The pertinent test for review of the district court's decision is abuse of discretion. Hastings v. Maine-Endwell Central School District, 676 F.2d 893, 897 n. 6 (2d Cir.1982). In view of all the foregoing, we are not prepared to hold that the district court's use of a 1.5 multiplier, which resulted in a total fee of $113,154.38, only 5% less than the amount Ginsberg asked the district court to approve, constituted such an abuse of discretion as to require modification by this Court. The order of the district court, construed to permit Ginsberg to deduct $114,122.25 ($113,154.38 plus interest from December 13, 1983 to January 17, 1984) from the escrow fund, is affirmed.
 
 
 
 [1]
 The magistrate's total award actually was $177,200. However, $57,750 of this amount was for the services of two attorneys who were not attorneys of record and whose claims were disallowed by the district court
 
 
 [2]
 In 1964, Daniel J. Cantor, a well known figure in the field of law office management, wrote, "Typically fees for lawyers in private practice in matters in which time is an important factor may average from $15 to $50 an hour and may be more for a small percentage of lawyers." Cantor, Ethics and Economics in Hourly Fees, 50 ABAJ 951 (1964). Records of the IRS for 1965 show that the average gross income for individual practitioners in New York State was $16,841. See Smith and Clifton, Income of Lawyers, 1965, 55 ABAJ 562, 563 (1969). Using the commonly accepted figure of 1200 billable hours a year, this averages out to approximately $14 per hour. While these figures do not dictate what findings should be made in the instant case, they do shed some degree of light on the subject