**Genaro MARRERO, Plaintiff,**

v.

**Police Officer CHRISTIANO, the City of New York, and Two Police Officers Sued Herein as "John Doe" Since Names Are Unknown, Defendants.**

**No. 82 Civ. 6852 (CBM).**

United States District Court, S.D. New York.

June 7, 1983.

Piken & Piken, P.C. by Claudia J. Stern, Robert W. Piken, Rego Park, N.Y., for movant.

Genaro Marrero, pro se.

Frederick A.O. Schwarz, Jr., Corp. Counsel by Kenneth A. Sommer, New York City, for defendants Christiano and the City of New York.

### MEMORANDUM OPINION AND ORDER

MOTLEY, Chief Judge.

This is an action for damages brought pursuant to 42 U.S.C. §§ 1981–1988. Plaintiff Genaro Marrero (Marrero) alleges that he was falsely arrested and beaten. He claims to have sustained physical and other injuries, and seeks $500,000.00 in compensatory, as well as $150,000.00 in punitive, damages.[1] The case came before the court on April 15, 1983 on the motion of Piken & Piken, P.C. (the Law Firm), attorneys for Marrero, for an order relieving it as counsel for Marrero and for an order fixing a lien in its favor on Marrero's eventual recovery, if any, in this action.

The court granted the Law Firm's motion to withdraw, and reserved decision on the motion for a lien. For the reasons set forth below, the motion for an order fixing a lien in favor of the Law Firm is denied.

### BACKGROUND:

The Law Firm asserts that, after it had obtained all of plaintiff's medical records and had responded to interrogatories propounded by defendants, it commenced settlement negotiations with defendants.[2] According to the Law Firm, defendants made an offer of settlement in the amount of $3,000.00, including attorneys' fees. The Law Firm states that it communicated the $3,000.00 settlement offer to Marrero, recommending that Marrero accept the settlement.[3] The Law Firm characterizes the alleged $3,000.00 offer as "the best possible settlement offer ...."[4] Marrero asserts that, at the time that the settlement offer was communicated to him, the Law Firm informed him that, if he "did not accep[t] the offer, [the Law Firm was] ready to be relieve[d] as [his] attorney."[5] Marrero refused to accept the offer.

The Law Firm then brought on the instant motion, stating that "[Marrero] is being uncooperative and ... it would be in everyone's best interest if we did not continue to represent him in this action."[6] The Law Firm contends, nonetheless, that it is entitled to a lien on any eventual recovery in this action. It seeks a lien in

---

1. *See* Complaint at ¶¶ 16 and 17.

2. Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page.
   According to Marrero, the Law Firm did not obtain the medical records of Marrero's current treating physician, despite the Law Firm's representations that it had obtained all of Marrero's medical records. *Compare* Affidavit of Genaro Marrero in Opposition at third unnumbered page *with* Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page.

3. Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page.
   Marrero contends that the Law Firm informed him that the settlement offer was for $1,000.00, rather than $3,000.00. Affidavit of Genaro Marrero in Opposition, at ¶ 3.

4. Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page.

Marrero expresses disbelief that an offer of $1,000.00 in settlement of a $500,000.00 claim can be considered reasonable, and further states that:

> I think that what is happening here is that this law firm has decided it does not want to do the work [wh]ich it undertook to do and is trying to pressure me to settle not because the firm believe[s] that [it] is a fair settlement but simply because they are trying to break their contract with me.

Affidavit of Genaro Marrero in Opposition at sixth unnumbered page.

5. Affidavit of Genaro Marrero in Opposition at third unnumbered page.

6. Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page.

the minimum amount of $1,336.00, calculated on the basis of an alleged contingent fee arrangement with Marrero[7] and the $3,000.00 settlement offer.

DISCUSSION:

■ A federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and lien claims between litigants and their attorneys when the dispute relates to the main action, regardless of the jurisdictional basis of the main action.

> This power resides in the federal court as ancillary to its conduct of the litigation.

*National Equipment Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 (2d Cir.1963).

> The termination of relations between a party in litigation in a federal court and his attorney is a matter relating to the protection of the court's own officers ....

*Id.* at 786 n. 1. *See also Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982); *In re Coordinated Pretrial Proceedings*, 520 F.Supp. 635, 649 (D.Minn. 1981); and *Moore v. Telfon Communications Corp.*, 589 F.2d 959, 967 (9th Cir. 1978).

■ The court has decided to exercise its ancillary jurisdiction to determine the Law Firm's claim for a lien. The instant claim is governed by New York law. *See Cook v. Moran Atlantic Towing Corp.*, 79 F.R.D. 392, 394 (S.D.N.Y.1978); and *Application of Kamerman*, 278 F.2d 411, 412–13 (2d Cir.1960).

The attorney's lien for compensation, or "charging lien," is codified at section 475 of the New York Judiciary Law. The statute provides in pertinent part that:

> From the commencement of an action ... in any court, ... the attorney who appears for a party has a lien upon his client's cause of action ... which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor .... The court upon the petition of the client or attorney may determine and enforce the lien.

(McKinney 1983).

■ "[W]here [, however,] an attorney withdraws without good and sufficient cause, his lien is *automatically* forfeited." *Suffolk Roadways, Inc. v. Minuse*, 56 Misc.2d 6, 7, 287 N.Y.S.2d 965, 967 (1968) (citation omitted) (emphasis added). *See also People v. Keeffe*, 50 N.Y.2d 149, 156, 428 N.Y.S.2d 446, 449, 405 N.E.2d 1012 (1980) ("An attorney's charging lien may be lost if he voluntarily withdraws or is discharged for misconduct ....").

■ Here, the Law Firm sought to withdraw because Marrero refused to accept a settlement offer.[8] Under New York law, the refusal of a client to accept a settlement offer is not good and sufficient cause for the withdrawal of the attorney.

> It is the client who controls the decision as to whether a settlement offer is to be accepted.... This decision is binding upon the attorney even though not in accordance with his advice. Certainly, a *refusal to accept a settlement*, even though favored by an attorney, *is not just cause for withdrawal by the attorney.*

---

7. The Law Firm contends that it had a contingent fee agreement with Marrero. A copy of a document purported to be the retainer agreement providing for a contingent fee is annexed as an exhibit to the affidavit of Claudia J. Stern, dated March 16, 1983.

   Marrero appears to have signed the document, but the space provided on the form for identification of the counsel retained is blank. Marrero asserts that he concluded the retainer agreement with the firm of Krause & Krause, P.C., rather than with the Law Firm. *See* Affidavit of Genaro Marrero in Opposition, at sixth unnumbered page. In view of the court's deci-

sion on the instant motion it is, however, unnecessary to pass upon the validity of the contingent fee arrangement that the Law Firm contends it made with Marrero. It should be noted, however, that the Law Firm filed the complaint in this action and is the only firm that has appeared on behalf of Marrero in this Court.

8. *See* Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page; Memorandum of Law in support of claim for lien at 3 ("Had the [plaintiff] saw [sic] fit to follow the advice of counsel [,] counsel's work, labor and services would have been complete ....").

*Suffolk Roadways,* 56 Misc.2d at 9, 287 N.Y.S.2d at 969 (emphasis added).

Notwithstanding the lack of good cause for the withdrawal of the Law Firm as plaintiff's counsel at this juncture, the court permitted the Law Firm to withdraw because of its demonstrated disinclination to further prosecution of plaintiff's case.[9] It was the court's opinion that continued representation by the Law Firm would not be in Marrero's best interests. Nevertheless, having withdrawn because of Marrero's refusal to accept a settlement offer, the Law Firm has forfeited its right under New York law to a lien on any eventual recovery in this action.

Although no issue has been raised with respect to the attorney's possessory lien upon the client's funds and papers, it is important to note that, under New York law, it would seem that the mere threat of withdrawal works a forfeiture of the possessory lien. *See Kaplan v. Kaplan,* 65 N.Y.S.2d 677, 678 (N.Y.Sup.1946) ("If plaintiff's ... attorneys [told her that they would withdraw from the case and] refuse[d] to further represent her without justification, they would clearly possess no lien upon her papers or funds."). Here, Marrero has alleged that the Law Firm, when it communicated the settlement offer, informed him that it would seek to withdraw if he refused to accept the offer.[10] The Law Firm has not denied the allegation, and did in fact seek to withdraw after Marrero refused to accept the settlement offer.

CONCLUSION:

Since the Law Firm withdrew from representation of Marrero without adequate justification, it is not entitled to a lien for compensation on Marrero's eventual recovery, if any. The motion for an order fixing a lien is therefore denied in all respects.

The next pre-trial conference in this case will be held on June 17, 1983 at 10:00 a.m. in courtroom 906.

SO ORDERED.

---

9. The Law Firm has characterized Marrero as "totally uncooperative" in refusing to accept the settlement offer. Affidavit of Claudia J. Stern, dated March 16, 1983, at second unnumbered page. The Law Firm has, in addition, submitted an affidavit outlining its views on the weaknesses of Marrero's claim for damages in this action. The gratuitous factual allegations contained therein, which will not be repeated here, unequivocally indicate that the Law Firm has forsaken its responsibility to protect the interests of its client and may, in addition, constitute breaches of the attorney-client privilege. *See* Reply Affidavit of Claudia J. Stern, dated April 8, 1983, at ¶ 2.

10. See n. 5, *supra,* and accompanying text.