**CLUETT, PEABODY & CO., INC., Plaintiff,**

v.

**CPC ACQUISITION COMPANY, INC., Paul A. Bilzerian, and Bilzerian and Brodovsky, Defendants.**

**Paul A. BILZERIAN, Bilzerian and Brodovsky, a California Partnership, and CPC Acquisition Company, Inc., a Delaware corporation, Plaintiffs,**

v.

**CLUETT, PEABODY & CO., INC., a New York corporation, Gordon E. Allen, Robert E. Allen, Richard Q. Armstrong, Howard L. Clark, John C. Emery, Jr., E. Hervey Evans, Jr., Richard L. Gelb, Floyd D. Hall, Henry H. Henley, Jr., Robert J. McDonald, William T. Seawell, Phillip L. Smith, and John L. Weinberg, Defendants.**

**Paul A. BILZERIAN, Bilzerian and Brodovsky, a California partnership, and CPC Acquisition Company, Inc., a Delaware corporation, Appellants,**

v.

**LATHAM & WATKINS, Appellees.**

**No. 510, Docket 87–7679.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1987.

Decided Dec. 15, 1988.

---

Michael M. Ingram, Tampa, Fla. (Max Wild, Wild & Wild, New York City, of counsel), for appellants.

Job Taylor III (James E. Brandt, Jennifer L. Adams, Latham & Watkins, New York City, of counsel), for appellees.

Before MESKILL, KEARSE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Appellants Paul A. Bilzerian, Bilzerian & Brodovsky and CPC Acquisition Company, Inc. (collectively "Bilzerian") appeal from a judgment of the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge,* entered in favor of appellee Lathan & Watkins in the amount of $354,569 for legal services rendered in connection with that law firm's representation of Bilzerian during his attempted takeover of Cluett, Peabody & Co., Inc. ("Cluett").

We affirm.

## Background

This action arises from a dispute concerning the legal fees charged to Bilzerian by the law firm Latham & Watkins, a California partnership with offices in Los Angeles and Manhattan, among other locations, for services rendered in connection with Bilzerian's bid to acquire control of Cluett. In May, 1985, Bilzerian retained Latham & Watkins in connection with his acquisition of Cluett stock. Bilzerian and Latham & Watkins entered into a verbal agreement whereby Latham & Watkins was to be paid at the unitary rate of $150 per hour for legal services related to the takeover.[1]

---

1. Under the unitary rate agreement, each partner and associate was to be billed at the same rate, $150 per hour. Typically, law firms charge their clients at different rates for partners and associates, with partners obviously commanding a greater hourly rate. Associates are usually billed at a rate commensurate with their experience. The theory underlying the

Between May and November, 1985, Latham & Watkins rendered a variety of legal services commonly performed during the course of an attempted acquisition of a corporation. These services included the preparation and filing of a voluminous number of documents with the appropriate state and federal governmental agencies, the preparation and control of all press releases and advertisements, negotiations with certain subordinated debtors, review of credit arrangements with various financial institutions, and litigation related thereto.

On October 16, 1985, in attempting to carry out his plan to take control of Cluett, Bilzerian initiated a tender offer for the acquisition of Cluett's outstanding shares. On that same day, in connection with Bilzerian's tender offer, Latham & Watkins commenced an action in the United States District Court for the Eastern District of California against Cluett, which was opposed to the tender offer, seeking both to enjoin Cluett from implementing a "poison pill" defensive tactic and damages from Cluett's directors for breach of fiduciary duty in attempting to implement the "poison pill." Approximately one week later, Cluett filed suit in the United States District Court for the Southern District of New York to enjoin Bilzerian's tender offer. Shortly thereafter, Bilzerian's California action was transferred to the Southern District of New York and the two actions were consolidated. The parties cross-moved for temporary and permanent injunctive relief in the district court. The district court issued a temporary restraining order against all parties.

On November 4, 1985, prior to the disposition of the remaining motions, Cluett agreed to be acquired by a third party, West Point–Pepperell, Inc. As part of the acquisition, West Point–Pepperell agreed to purchase all Cluett shares held by Bilzerian. The effect of that agreement was thus to moot the Bilzerian–Cluett litigation. Bilzerian realized a $7.5 million profit on his sale of Cluett stock, and also received $5 million in reimbursement for fees and expenses incurred during his attempted acquisition of Cluett, including Latham & Watkins' legal fees. On January 14, 1986, the parties entered into a stipulation dismissing with prejudice the actions related to the tender offer.

On or about November 15, 1985, however, a dispute arose over the amount Latham & Watkins had billed Bilzerian for services rendered. On that date, Latham & Watkins received a letter from David A. Tallant, Bilzerian's personal attorney, which stated that Bilzerian would pay only approximately sixty percent of Latham & Watkins' fees and disbursements billed through October 31, 1985, based upon Bilzerian's belief that he had been charged excessively. The letter further stated that such payment would constitute full satisfaction of all sums due and owing, including November attorney time and disbursements not yet billed, and charges for continued representation until all matters concerning the transaction were completed.

On November 19, 1985, Job Taylor III, a member of Latham & Watkins, informed Mr. Tallant that despite the existence of several outstanding matters connected with the Cluett transaction, Latham & Watkins would no longer continue to represent Bilzerian without payment of the fees and disbursements previously incurred and assurance satisfactory to Latham & Watkins with respect to the payment of future fees and disbursements. On November 27, 1985, Latham & Watkins moved for permission to withdraw as Bilzerian's counsel in the Southern District litigation. The district court granted that motion on December 3, 1985.

On December 10, 1985, Bilzerian filed a declaratory judgment action in California state court seeking a determination of the amount of legal fees owed to Latham & Watkins. Shortly thereafter, Latham & Watkins moved that the district court in the instant action exercise its ancillary jur-

---

unitary billing concept is that the mix of experience of all the attorneys involved will render the bill appropriate.

isdiction over the fee dispute and determine the fees owed. That motion was referred to a magistrate by Judge Sand. On May 1, 1986, the district court adopted the magistrate's report, which recommended, as a matter of discretion, that ancillary jurisdiction be exercised over the fee dispute.

Following lengthy motion practice, the action was tried to a jury in May, 1987. The jury returned a verdict in favor of Latham & Watkins in the amount of $354,-569, and judgment was entered thereon on July 21, 1987. This appeal followed.

## Discussion

Bilzerian raises two claims on this appeal. First, he argues that the billing of certain law firm employees not yet admitted to the bar of any jurisdiction at the same hourly rate as licensed attorneys, without disclosure to the client, is improper and fraudulent, requiring a determination that Bilzerian owes nothing to Latham & Watkins. Second, Bilzerian contends that the district court abused its discretion in exercising its ancillary jurisdiction over the fee dispute. The parties stipulated that New York law is applicable in this action.

### A. The Fraud Claim.

■ Bilzerian's first claim is a novel one, never before put to this court.[2] He contends that by billing certain associates not yet admitted to the bar of any state at the same hourly rate as attorneys who had

been admitted to practice, Latham & Watkins attempted to defraud him, and that this court must put a stop to such a deceptive and corrupt billing practice by denying any recovery to Latham & Watkins. We conclude that his claim is utterly devoid of merit.

The facts pertinent to this issue are largely undisputed. Bilzerian and Latham & Watkins entered into a verbal contract whereby Bilzerian was to be billed at a unitary rate of $150 per hour.[3] Bilzerian subsequently learned that three Latham & Watkins "employees" who had graduated from law school, but had not yet been admitted to practice in any jurisdiction, performed approximately a hundred hours of work on the Cluett transaction for which he was billed at the $150 rate. Although Latham & Watkins knew that these "employees" were unadmitted, the firm never disclosed that fact to Bilzerian. This, Bilzerian claims, constitutes fraud on the part of Latham & Watkins.

Specifically, Bilzerian argues that the trial court incorrectly instructed the jury that the billing of unlicensed attorneys at attorneys' rates could not even be considered as a basis for fraud.[4] Judge Sand charged in pertinent part:

> I also instruct you that although you have heard testimony with respect to the billing for legal services rendered by first year associates not yet admitted to the bar, I instruct you that although you

---

2. One is reminded of the comment by Professor Henry Higgins, in "My Fair Lady," that Eliza Doolitle's father Alfred was "one of the most original moralists in England."

3. Latham & Watkins unsuccessfully contended below that the employment agreement with Bilzerian called for a modified unitary billing rate of $200 per hour for partners and $150 per hour for associates. The jury rejected that claim and found that the agreement was for a $150 unitary rate for both partners and associates. Latham & Watkins does not challenge that jury determination on appeal.

4. Bilzerian's request to charge on this issue, which the district court rejected, stated:

> Charging a Client for Services Performed by Non-Attorneys at the Rate Agreed Upon For Attorneys is a Fraud.

> Billing non-attorney time at an attorney's contractual rate, without identifying it as non-attorney time is fraudulent.
> California Rules of Professional Conduct, Rule 2–107(A); ABA Code of Professional Responsibility, DR 2–106(A); Los Angeles County Bar Association Ethics Committee, Formal Opinion No. 391, September 3, 1981, a copy of which immediately follows, holds, in relevant part (emphasis added):
> > Normally law clerk and legal assistant services should be billed at an appropriate rate lower than the rate for legal services by an attorney. We are aware of no more specific guidelines for the billing of such services. *The billing of* secretarial services (or *law clerk* or *paralegal services*) *as attorney time* is a violation of Rule 2–107(a), in the opinion of this Committee, because it *fraudulently misrepresents to the client that legal services have been rendered by an attorney.*

may consider Latham & Watkins billing for the services of not yet admitted attorneys in considering the fair and reasonable value of Latham & Watkins services you may not base a finding of fraud on this practice which defendant's expert has testified is the uniform practice in this community—that is, the inclusion in legal services of time spent by first year associates not yet admitted.

\* \* \*

As I have stated, a finding of fraud or bad faith requires a finding that the attorney is not entitled to any compensation or fee.

Under New York law, it is well settled that intent to deceive is an essential element of fraud. *Kalisch–Jarcho, Inc v. City of New York,* 58 N.Y.2d 377, 385 n. 6, 448 N.E.2d 413, 417 n. 6, 461 N.Y.S.2d 746, 750 n. 6 (1983); *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Irving Trust Co. v. Gomez,* 550 F.Supp. 773, 774 (S.D.N.Y. 1982). The district court determined that any evidence regarding Latham & Watkins' intent to deceive Bilzerian with respect to the rates billed for unlicensed associates was insufficient as a matter of law to warrant a jury instruction on the issue. The record amply supports that conclusion.

Judge Sand noted that the only evidence relevant to the fraud issue was the testimony of Daniel P. Levitt, a partner at a New York law firm and *Bilzerian's expert witness.* Mr. Levitt testified:

I think it is a standard practice in this community for law firms where they charge for their time to charge for the time of unadmitted associates at the same rate they would charge when they are admitted at the entry level billing.

Bilzerian offered no evidence to controvert the testimony that this was the custom and practice of New York law firms. Judge Sand accordingly stated at the charging conference:

Your claim is fraud. The requirements of fraud are very clear. An intentional misrepresentation made to deceive and relied upon.

What evidence is there to show, given Mr. Levitt's testimony, and the universal practice in this community, that the billing practice was with the intent to deceive?

I'm going to strike the claim of fraud insofar as it relates to unadmitted attorneys.

That conclusion was wholly appropriate.

Bilzerian nonetheless contends that bar associations across the country have declared such a practice to be improper and fraudulent, and that this court should therefore adopt that rule.

In support of this argument, Bilzerian relies primarily upon three ethics opinions by local bar associations; two from the State of New York and one from California.

In addition to the fact that such ethics opinions are merely advisory and not binding on this court, Bilzerian's reliance thereon is further misplaced because all three opinions are inapposite to the facts before us. Bilzerian cites New York City Bar Association Ethics Opinion No. 837, which states the general proposition that "it is not professionally proper for members of the Bar to represent an employee to be a member of the Bar when the employee has not in fact been admitted to the Bar." This opinion, however, concerns the responsibilities that may be entrusted to an unadmitted first year law student, and nowhere addresses billing practices with respect to law school graduates. It is thus irrelevant to the case at bar.

New York County Lawyers' Association Opinion No. 666 is similarly irrelevant. That opinion discusses the tasks in which an unadmitted law school graduate may engage on behalf of a law firm. Again, billing practices were not considered in the opinion.

Los Angeles Bar Association Ethics Committee Formal Opinion No. 391 is equally unavailing, since it only applies to billing practices with respect to law clerks, paralegals and secretaries. While it specifically states that the services of such employees should normally be billed at a lower rate,

the overall description of these services is "non-attorney time." Although the opinion is less than completely clear, there is no indication that it is intended to apply to billing for the services of law school graduates. To the extent it might be read as applicable to the instant situation, we decline to follow it as setting a standard for New York attorneys.

As a last resort, Bilzerian argues that *The T.J. Hooper*, 60 F.2d 737 (2d Cir.1932), requires this Court to reject Latham & Watkins' custom and practice defense. *The T.J. Hooper*, however, dealt with the propriety of a custom and practice defense in a negligence setting, and has no application here where Bilzerian is required to establish intent to deceive.

We conclude that the district court was clearly correct in its refusal to charge the jury that Latham & Watkins' billing practice with respect to unadmitted associates was a basis to return a fraud verdict against Latham & Watkins.

B. *Ancillary Jurisdiction.*

Bilzerian also argues that the district court abused its discretion in exercising ancillary jurisdiction with respect to Latham & Watkins' claim for attorneys' fees. Bilzerian contends that this action should have been litigated before the California state court in which he brought the declaratory judgment action. This argument is without merit.

 "It is well settled that '[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes ... between litigants and their attorneys when the dispute relates to the main action....'" *Petition of Rosenman Colin Freund Lewis & Cohen,* 600 F.Supp. 527, 531 (S.D.N.Y.1984) (quoting *Marrero v. Christiano,* 575 F.Supp. 837, 839 (S.D.N.Y. 1983)); *see National Equip. Rental Ltd. v. Mercury Typesetting Co.,* 323 F.2d 784, 786 (2d Cir.1963) (federal district court may condition substitution of attorneys upon client's payment of, or provision of security

for, substituted attorney's reasonable fees and disbursements). Here, the district court acted well within its discretion in adopting the report and recommendation of the magistrate, which concluded that the fee dispute was properly related to the main action and that ancillary jurisdiction could accordingly be invoked.

In so concluding, the magistrate relied upon discretionary factors that, on balance, weighed in favor of exercising jurisdiction over the fee dispute. First, Magistrate Francis found that the lower court's familiarity with the subject matter of the suit lent support to the exercise of jurisdiction. Indeed, familiarity with the amount and quality of work performed by Latham & Watkins would enormously facilitate rapid disposition of a fee dispute, while a great deal of the record would have be considered anew and relitigated in a state court unfamiliar with the proceedings.[5] Second, a court has a responsibility to protect its own officers in such matters as fee disputes. *See National Equip. Rental,* 323 F.2d at 786 n. 1; *Marrero,* 575 F.Supp. at 839. Third, the convenience of the parties would be served equally well whether the case was litigated in California or New York. Finally, the magistrate found that considerations of judicial economy had an inconclusive impact on the issue of jurisdiction. The magistrate accordingly determined that ancillary jurisdiction should be exercised, as a matter of discretion. We substantially agree with the magistrate's carefully reasoned opinion, and therefore conclude that the exercise of ancillary jurisdiction over the fee dispute was not an abuse of the district court's discretion.

Bilzerian contends, however, that even if the lower court properly invoked its ancillary jurisdiction, the scope of that jurisdiction was impermissibly broad. Specifically, he asserts that ancillary jurisdiction may be exercised only with respect to services rendered in the underlying litigation, citing *Pay Television of Greater New York, Inc.*

---

5. Even though the fee issue was tried to a jury, the presiding judge's familiarity with the case would facilitate evidentiary rulings, instructions on the law, and other aspects of the case falling within the province of the court rather than the jury.

*v. Sheridan,* 766 F.2d 92, 94 (2d Cir.1985), and *National Equip. Rental,* 323 F.2d at 786–87. We disagree. *Pay Television* requires only that the fees "arise from the underlying action" rather than "work done on unrelated actions." 766 F.2d at 94. *National Equip. Rental* precluded the exercise of ancillary jurisdiction as to "some eight state court actions and other litigated matters … unrelated to the pending litigation." 323 F.2d at 787.

Here, on the contrary, both the litigation below and all the services for which compensation was sought related to the Cluett takeover. The district court's exercise of ancillary jurisdiction was accordingly well within its discretion. *Cf. Petition for Rosenman Colin Freund Lewis & Cohen,* 600 F.Supp. at 531 (court's ancillary power extends to disputes that arise after the initial litigation is no longer before the court) (citing *Application of Kamerman,* 278 F.2d 411 (2d Cir.1960)). It would have been wasteful and duplicative, under the circumstances, to require a bifurcated procedure in which part of the fee dispute would be resolved by a federal court in Manhattan and another part by a state court in Sacramento, California.

### Conclusion

The time has come for Bilzerian to disgorge to Latham & Watkins a relatively minuscule portion of the five million dollars which Bilzerian was paid by West Point–Pepperell, Inc. to cover the expenses of his tender offer for Cluett. The judgment of the district court is affirmed.