927 F.2d 60
 59 USLW 2587
 In the Matter of the Petition of Stanley M. CHESLEY, F. Lee
Bailey, Lionel Alan Marks, and Michael Phulwani,
Individually, and on Behalf of the Plaintiffs' Executive
Committee, for a Judgment Pursuant to Section 475 New York
Judiciary Law, determining and enforcing an attorney's
charging lien, Plaintiffs-Appellants,
v.
UNION CARBIDE CORPORATION and the Union of India,
Defendants-Appellees.
 No. 401, Docket 89-7663.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 27, 1989.
Decided Feb. 25, 1991.
 
 Lionel Alan Marks, New York City, for plaintiffs-appellants.
 Bud G. Holman, New York City (William A. Krohley, Lisa E. Cleary, Kelley Drye & Warren, New York City, of counsel), for defendant-appellee Union Carbide Corp.
 Before KEARSE, ALTIMARI and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Appellants are and represent American attorneys who, on behalf of Indian plaintiffs who were victims in the Bhopal gas leak disaster that occurred in December 1984, filed suits against Union Carbide Corporation ("UCC"). These actions originated in the United States District Court for the Southern District of New York, or were transferred thereto, pursuant to 28 U.S.C. Sec. 1407 (1988), by the Judicial Panel on Multidistrict Litigation. See In re Union Carbide Corp. Gas Plant Disaster, 601 F.Supp. 1035 (J.P.M.D.L.1985) (per curiam). These suits were subsequently consolidated with a parallel suit filed by the Union of India ("UOI"), purporting to act as parens patriae on behalf of the Bhopal victims.[1]
 
 
 2
 In response to a motion by UCC, the district court, John F. Keenan, Judge, dismissed these actions on the ground of forum non conveniens. See In re Union Carbide Corp. Gas Plant Disaster, 634 F.Supp. 842 (S.D.N.Y.1986), modified, 809 F.2d 195 (2d Cir.), cert. denied, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987) ("Union Carbide"). Litigation in the courts of India ultimately resulted in a $470,000,000 settlement in favor of the Bhopal victims.
 
 
 3
 Appellants, who did not participate in the Indian proceedings, thereupon moved in the district court for the determination and enforcement of an attorney's charging lien pursuant to N.Y.Jud.Law Sec. 475 (McKinney 1983) to recover fees and expenses for their representation of Bhopal victims.[2] The district court denied the motions on the ground that it lacked subject matter jurisdiction in view of the prior forum non conveniens dismissal. Appellants contend here that the motions should have been heard pursuant to the district court's ancillary jurisdiction.
 
 
 4
 We affirm, although on a different basis than that expressed by the district court.
 
 Background
 
 5
 The Bhopal disaster was caused by the release of methyl isocyanate from a pesticide plant operated by Union Carbide India Limited ("UCIL") in Bhopal, India shortly after midnight on December 3, 1984, and resulted in thousands of deaths and injuries. "UCIL is incorporated under the laws of India. Fifty and nine-tenths percent of its stock is owned by UCC, 22% is owned or controlled by the government of India, and the balance is held by approximately 23,500 Indian citizens." Union Carbide, 809 F.2d at 197.
 
 
 6
 At the outset of this litigation, the district court appointed two of the appellants, Stanley H. Chesley and F. Lee Bailey, and one representative of UOI as a Plaintiff's Executive Committee to coordinate the litigation.
 
 
 7
 On July 2, 1985, the district court ordered that each participating attorney or firm make an initial payment of $1,000 to an "Executive Committee/Liaison Counsel Expense Fund." On August 23, 1985, the court ordered an increase of that payment to $3,000. Also, pursuant to an offer it initially made on April 18, 1985, UCC contributed five million dollars in interim relief for the Bhopal victims, which was treated as an advance payment or credit to UCC.
 
 
 8
 This contribution was initially suggested by Philadelphia counsel for certain Bhopal plaintiffs. Counsel for UOI stated at the hearing where this contribution was addressed, however, without rejoinder or objection by any plaintiff's counsel, that "there should be no attorneys' fees at all attached to this interim relief, neither now nor in the future," and reiterated that view a little later in the hearing. A subsequent district court order that dealt with the distribution of those funds specified: "Neither the promulgation, implementation nor anything contained herein shall be asserted or used in any manner against the interests of [UCC]."
 
 
 9
 On July 29, 1985, UCC moved to dismiss all of the Bhopal cases pending before Judge Keenan on the grounds that: (1) the district court was forum non conveniens; (2) the attorneys purporting to appear on behalf of the individual plaintiffs lacked authority to maintain the actions; and (3) the plaintiffs did not have standing or authority to bring these cases in the United States. Because the forum non conveniens issue was potentially dispositive, consideration of the latter issues was deferred, and the district court never reached those issues. Rather, on May 12, 1986, as amended June 10, 1986, the district court issued an opinion and order granting UCC's motion on the ground of forum non conveniens, subject to the conditions that:
 
 
 10
 1. Union Carbide shall consent to submit to the jurisdiction of the courts of India, and shall continue to waive defenses based upon the statute of limitations;
 
 
 11
 2. Union Carbide shall agree to satisfy any judgment rendered against it by an Indian court, and if applicable, upheld by an appellate court in that country, where such judgment and affirmance comport with the minimal requirements of due process;3. Union Carbide shall be subject to discovery under the model of the United States Federal Rules of Civil Procedure after appropriate demand by plaintiffs.
 
 
 12
 Union Carbide, 634 F.Supp. at 867.
 
 
 13
 Contemporaneously, by letter dated May 27, 1986 addressed to the "Bhopal Disaster Plaintiffs' Committee", and individually to appellants Bailey and Chesley, as well as two other counsel for Bhopal plaintiffs, appellant Marks stated:
 
 
 14
 I have a very important request to make before the final order is entered on the forum non conveniens motion.
 
 
 15
 I request that a motion or application be made to the Court that the dismissal order be subject to a lien for attorneys' disbursements (and fees) for services against the proceeds of any settlement or suit paid by Union Carbide (USA) or its insurers.
 
 
 16
 * * * * * *
 
 
 17
 If you do not agree to immediately make such application before the Court prior to the entry of the final order, then please give the undersigned permission to individually apply to the Court to impress such a lien.
 
 
 18
 No such motion or application was made at that time, however, nor thereafter until February 1989, as hereinafter discussed.
 
 
 19
 This court affirmed the order of the district court, but modified it to delete the second and third conditions. Union Carbide, 809 F.2d at 205-06. In rejecting a suggestion by UCC that the district court exercise some sort of supervisory role to ensure the observance of due process standards in the continuing litigation in the courts of India, we said:
 
 
 20
 The district court's jurisdiction is limited to proceedings before it in this country. Once it dismisses those proceedings on grounds of forum non conveniens it ceases to have any further jurisdiction over the matter unless and until a proceeding may some day be brought to enforce here a final and conclusive Indian money judgment.... The concept of shared jurisdictions is both illusory and unrealistic. The parties cannot simultaneously submit to both jurisdictions the resolution of the pre-trial and trial issues when there is only one consolidated case pending in one court.
 
 
 21
 Union Carbide, 809 F.2d at 205.
 
 
 22
 Litigation then ensued in the courts of India for more than two years, culminating in a settlement, on February 15, 1989, of the claims against UCC and UCIL by Bhopal victims for 470 million dollars. Pursuant to the settlement agreement and at the direction of the Supreme Court of India, UCC and the UCIL "deposited [the settlement funds] to the credit of the Registrar of [the Supreme] Court in a Bank under directions to be taken from [that] Court" (order of Supreme Court of India dated February 15, 1989), there to be consolidated with the residue of the five million dollar interim payment previously made by UCC.
 
 
 23
 Bailey and Chesley thereupon brought in the district court a motion seeking an order:
 
 
 24
 a. Compelling the Union of India and Union Carbide Corporation to submit to this Court a plan for the distribution of the proceeds of the settlement of $470 Million ($470,000,000.00) Dollars which has apparently been reached, and
 
 
 25
 b. Requesting this Court to reimburse the Plaintiffs' Executive Committee members, F. LEE BAILEY AND STANLEY M. CHESLEY, and the remaining Plaintiffs' attorneys for their legitimate costs and expenses related to the maintenance of the Bhopal Litigation in the United States from the settlement fund created by the Union Carbide Corporation and to pay compensation for services rendered, and
 
 
 26
 3. Setting a date for the submission of fee applications and of papers documenting the services performed and expenses incurred and/or for a hearing regarding this matter....
 
 
 27
 This motion was supplemented by a letter application by Marks which requested that "the Court conduct a hearing pursuant to Section 475 of [the] New York Judiciary Law to determine the amount of the plaintiffs' attorney's liens for services and disbursements," and further by a "Petition for Attorney's Lien under Section 475 of the New York Judiciary Law" submitted by Chesley, Bailey, Marks, and appellant Phulwani. The petition asserted, inter alia, that:
 
 
 28
 The proceeds of settlement of $425 Million paid by the Union Carbide Corporation (including the $5 Million interim payment made pursuant to the June 7, 1985 Order of this court) are presently on deposit with the Registrar of the Supreme Court of India. Notwithstanding the payment on deposit, the Union Carbide Corporation must stand the consequences. The petitioners had a lien upon the sums which the Union Carbide Corporation agreed to pay and paid to extinguish the cause of action, and the law does not permit it to say that it has nothing in its hands to satisfy it. The lien was not affected by the adjustments and transfers, but leapt from the extinguished cause of action to the amount agreed upon in settlement. (Fischer-Hansen v. Brooklyn Heights R.R. Co., 173 N.Y. 492, 501-502, 66 N.E. 395).
 
 It concluded:
 
 29
 WHEREFORE petitioners respectfully request that this court pursuant to New York Judiciary Law Section 475, determine and enforce an attorney's charging lien against the proceeds of the $5 Million settlement fund obtained pursuant to the June 5, 1985 order of this Court, and the $425 Million settlement fund, which moneys are now on deposit with the Registrar of the Supreme Court of India, and enforce said lien by judgment against the Union Carbide Corporation and the Union of India.
 
 
 30
 The district court denied the applications on the ground that it lacked subject matter jurisdiction. The district court premised this conclusion upon this court's prior ruling that after the forum non conveniens dismissal, the district court "cease[d] to have any further jurisdiction over the matter." Union Carbide, 809 F.2d at 205.
 
 
 31
 This appeal followed.
 
 Discussion
 
 32
 Appellants contend here that although this action was dismissed on the ground of forum non conveniens and the litigation continued in the courts of India, the district court had ancillary jurisdiction to hear their claims for attorney's fees and expenses. We agree that the forum non conveniens dismissal did not operate as an automatic bar to the district court's exercise of ancillary jurisdiction regarding appellants' applications. We nonetheless affirm, concluding that it would have been an abuse of discretion for the district court to consider petitioners' fee application in view of their failure to make any prior application for payment from the settlement fund in India.
 
 
 33
 Under the doctrine of ancillary jurisdiction, a federal court may exercise jurisdiction over a claim for which no subject matter jurisdiction independently obtains if the claim is sufficiently related to an initial claim properly before the court. See Baylis v. Marriott Corp., 843 F.2d 658, 663 (2d Cir.1988); Stamford Bd. of Educ. v. Stamford Educ. Ass'n, 697 F.2d 70, 72 (2d Cir.1982); cf. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 70-71 (2d Cir.1990) (ancillary equitable jurisdiction). The decision to hear an ancillary claim is discretionary, however, and turns upon "whether the policies of 'judicial economy, convenience, and fairness to litigants' are furthered by the assumption of jurisdiction." Stamford Bd. of Education, 697 F.2d at 72 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).
 
 
 34
 " 'It is well settled that "[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes ... between litigants and their attorneys when the dispute relates to the main action...." ' " Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir.1988) (quoting Petition of Rosenman Colin Freund Lewis & Cohen, 600 F.Supp. 527, 531 (S.D.N.Y.1984) (quoting Marrero v. Christiano, 575 F.Supp. 837, 839 (S.D.N.Y.1983))). UCC nonetheless contends, and the district court held below, that the district court did not have the power to exercise ancillary jurisdiction over this fee dispute because the main action had been dismissed on the ground of forum non conveniens.
 
 
 35
 Dismissal for forum non conveniens is only possible if the court initially had jurisdiction. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947); Mokhiber v. Cohn, 783 F.2d 26, 28 (2d Cir.1986) (per curiam) ("forum non conveniens presumes jurisdiction"). As a general rule, furthermore, a federal court's ancillary jurisdiction to resolve fee disputes "extends to disputes that arise after the initial litigation is no longer before the court." Rosenman Colin, 600 F.Supp. at 531 (citing Grimes v. Chrysler Motors Corp., 565 F.2d 841 (2d Cir.1977); Application of Kamerman, 278 F.2d 411 (2d Cir.1960)); see also 520 East 72nd Commercial Corp. v. 520 East 72nd Owners Corp., 691 F.Supp. 728, 737 (S.D.N.Y.1988) (quoting Rosenman Colin), aff'd, 872 F.2d 1021 (2d Cir.1989).
 
 
 36
 This rule has been applied in cases where there has been a settlement. See, e.g., Cluett, Peabody, 863 F.2d at 253; Grimes, 565 F.2d at 842-44; Schmidt v. Zazzara, 544 F.2d 412, 413-14 (9th Cir.1976); Kamerman, 278 F.2d at 412-13 & n. 1; cf. Woodbury v. Andrew Jergens Co., 69 F.2d 49, 51 (2d Cir.1934) ("it would be a matter of entire indifference to the incidental jurisdiction of the District Court if the main suit had been completely settled"). As Woodbury indicates, however, see 69 F.2d at 51, in such cases the court may be supervising the distribution of a settlement fund that remains within its jurisdiction, as occurred in Grimes and Kamerman, and such a situation is not presented on this appeal. Nor, on the other hand, was any such settlement fund involved with respect to the fee disputes in Cluett, Peabody and Schmidt. Ancillary jurisdiction to determine attorney's fees has also been exercised after a party voluntarily discontinued a litigation, see United States v. Ford, 650 F.2d 1141, 1142-44 (9th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982); or took concessionary measures that mooted the case. See Reiser v. Del Monte Properties Co., 605 F.2d 1135, 1140 (9th Cir.1979); cf. Cooter & Gell v. Hartmarx Corp., --- U.S. ----, 110 S.Ct. 2447, 2454-57, 110 L.Ed.2d 359 (1990) (court has continuing jurisdiction to require payment of attorney's fees and disbursements as Fed.R.Civ.P. 11 sanction against party that has voluntarily discontinued action); Heinrichs v. Marshall & Stevens Inc., 921 F.2d 418, 420-21 (per curiam) (2d Cir.1990) (discovery sanctions may be awarded against party after entry of summary judgment dismissing his claim).
 
 
 37
 In view of the general rule that ancillary jurisdiction to resolve fee disputes continues after the initial litigation is no longer before the court, and the wide array of situations in which that principle has been applied, we decline to announce any general rule that a forum non conveniens dismissal, without more, bars any subsequent exercise of ancillary jurisdiction with respect to attorney's fees in the dismissed case. Nor do we consider our statement in Union Carbide, that "[o]nce [the district court] dismisses ... proceedings on grounds of forum non conveniens it ceases to have any further jurisdiction over the matter," 809 F.2d at 205, to have established such a rule. That statement was addressed to the suggested exercise of continuing jurisdiction over the merits of the case, and does not decide the issue presented here, which was not before this court on the prior appeal. Indeed, nothing inherent in the nature of a forum non conveniens dismissal precludes the future exercise of jurisdiction over the merits of a case under appropriate circumstances. Recently, for example, we conditioned such a dismissal to allow a plaintiff to return to a local district court for temporary injunctive relief if the foreign forum did not act upon plaintiff's application for such relief within sixty days after its submission to the foreign forum. See Borden Inc. v. Meiji Milk Products Co., 919 F.2d 822, 829 (2d Cir.1990); see also Calavo Growers of Cal. v. Belgium, 632 F.2d 963, 968 (2d Cir.1980), cert. denied, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).
 
 
 38
 Accordingly, we conclude that the forum non conveniens dismissal in the instant case did not eo ipso preclude subsequent exercise by the district court of ancillary jurisdiction to consider appellants' fee applications.[3] We decide, we hasten to add, only that no automatic bar resulted. As stated hereinabove, the determination whether to exercise ancillary jurisdiction is discretionary, and is informed by considerations of judicial economy, convenience, and fairness to litigants. In this case, furthermore, the doctrine of comity, i.e., "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another," Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895), weighs heavily in the balance.
 
 
 39
 As recited hereinabove, the initial application by Bailey and Chesley was directed exclusively toward the settlement fund that was on deposit in India under the supervision of the Supreme Court of India. That application requested the district court (1) to compel UOI and UCC to submit to that court a plan for the fund's distribution, and (2) to compensate the lawyers in the Southern District litigation from that fund. An affirmation in support of that application helpfully added that: "Given the past track record of the Union of India in this litigation, it is difficult to accept that the settlement funds will reach the hands of the victims entitled to relief without [the district court's] intervention."
 
 
 40
 It is hard to imagine any more direct affront to comity than the relief sought herein with respect to the settlement fund in India. As we have said, with specific reference to the courts of India: "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity...." Jhirad v. Ferrandina, 536 F.2d 478, 484-85 (2d Cir.), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). Similarly, in reversing an injunction prohibiting parties from proceeding with litigation in the courts of Canada, the First Circuit said: "The Congressional policy upon which 28 U.S.C. Sec. 2283 [restricting federal courts' power to issue injunctions staying proceedings in state courts] is based should, a fortiori, be reflected by a self-imposed reluctance to interfere with courts of foreign countries." Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc., 412 F.2d 577, 578 (1st Cir.1969). Thus, in China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir.1987), we reversed, as an abuse of discretion, a district court injunction barring parties to a dispute from pursuing parallel litigation in the courts of Korea.
 
 
 41
 An additional consideration, furthermore, is presented in this case. "A common-law rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1145 (9th Cir.1989) (collecting cases). "The purpose of the rule is the maintenance of comity between courts...." Id. It has been articulated frequently in the context of federal/state court relationships. See, e.g., Donovan v. Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964); Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466-68, 59 S.Ct. 275, 280-81, 83 L.Ed. 285 (1939); Pufahl v. Park's Estate, 299 U.S. 217, 226 (1936); United States v. Bank of N.Y. & Trust Co., 296 U.S. 463, 477-79, 56 S.Ct. 343, 347-48, 80 L.Ed. 331 (1936) (principle applies whenever, in order to give effect to its jurisdiction, a court must control property as to which action by another court is sought); Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195-96, 55 S.Ct. 386, 388-89, 79 L.Ed. 850 (1935). We deem the rule equally applicable to requested interference by American courts with a res under the jurisdiction of a foreign court. Cf. Canadian Filters, 412 F.2d at 578 (policy against federal court injunctive interference with state courts should apply, a fortiori, as to foreign courts); Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1213 (D.C.Cir.1989) (anti-foreign suit injunction should be granted " 'only with care and great restraint' ") (quoting Canadian Filters, 412 F.2d at 578); China Trade & Dev. Corp., 837 F.2d at 36 (same); Compagnie des Bauxites de Guinea v. Insurance Co. of N. Am., 651 F.2d 877, 887 (3d Cir.1981) (enjoining parties against proceeding in foreign court necessarily affects foreign court and compromises "the comity which the federal courts owe to courts of other jurisdictions") (quoting Canadian Filters, 412 F.2d at 578), aff'd, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), cert. denied, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982).
 
 
 42
 We accordingly conclude that, although the prior forum non conveniens dismissal did not automatically preclude any invocation of ancillary jurisdiction to consider appellants' applications for attorney's fees and disbursements, that jurisdiction may not be exercised, directly or indirectly, with respect to the settlement fund on deposit in India under the supervision of the Supreme Court of India.
 
 
 43
 This conclusion, however, does not dispose of the appeal. Petitioner's original application sought only relief regarding the settlement fund in India, and, as has been stated, we see no basis for such relief. The subsequent applications, however, invoked Fischer-Hansen v. Brooklyn Heights R.R. Co., 173 N.Y. 492, 66 N.E. 395 (1903), and requested both the determination of a lien pursuant to N.Y.Jud.Law Sec. 475 (McKinney 1983) and its enforcement "by judgment against [UCC] and [UOI]." There was thus placed in issue, at least arguably, the possibility of proceeding directly against UOI[4] and UCC, wholly apart from any attempted supervision or direction by the district court regarding the settlement fund in India.
 
 
 44
 We have long recognized that the lien created by section 475, which attaches by its terms in an action or proceeding "in any court or before any ... federal department," is enforceable in federal courts in accordance with its interpretation by New York courts. See United States v. Bosurgi, 750 F.2d 216, 219 (2d Cir.1984); Markakis v. The S.S. Mparmpa Christos, 267 F.2d 926, 927 (2d Cir.1959); McChesney v. Sims, 267 F.2d 215, 217 (2d Cir.1959); Petition of Rosenman & Colin, 674 F.Supp. 107, 108 (S.D.N.Y.1987). Fischer-Hansen establishes that where a defendant settles with a plaintiff without making provision for the fee of the plaintiff's attorney, that attorney can in a proper case proceed directly against the defendant pursuant to section 475. Specifically:
 
 
 45
 [T]he defendant is estopped from saying that with notice of the lien he parted with the entire fund.
 
 
 46
 ... [Plaintiff's attorney's] lien upon the proceeds ... was not defeated by payment to his client, for the defendant paid at its peril. It had both actual and constructive notice of the lien, and while it does not appear that it knew the share of the fund that the plaintiff was entitled to receive, its duty was to ascertain the amount and retain it for him.
 
 
 47
 Fischer-Hansen, 173 N.Y. at 501, 66 N.E. at 397-98.
 
 
 48
 Fischer-Hansen recognized, however, that the attorney's lien attaches to the fund ultimately recovered as a result of the litigation:
 
 
 49
 [A] lien upon a claim or cause of action follows the fund created by a settlement of the claim, which thereupon ceases to exist. It attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter, and must stand the consequences.
 
 
 50
 173 N.Y. at 501, 66 N.E. at 398. See also In re Shirley Duke Associates, 611 F.2d 15, 18 (2d Cir.1979) ("In the event of settlement, the attorney's lien attaches to the fund representing the cause of action extinguished by the settlement."). In Fischer-Hansen, immediately after settling his case, the plaintiff received the settlement fund and left the country, and his attorney was unable to proceed against him. Under these circumstances, the court allowed the attorney to proceed directly against the defendant.
 
 
 51
 Here, by contrast, Union Carbide has not paid the settlement monies directly to plaintiffs in manifest disregard of obvious obligations to plaintiffs' counsel, but rather has paid them to a fund controlled by the Supreme Court of India in compliance with a settlement approved and ordered by that court. Further, petitioners never appeared in behalf of any party in the Indian litigation or made any application for fees therein. In addition, the litigation is in the courts of India as the result of an explicit determination by this court that India is the proper forum for the case. On these facts, we believe that it would be inequitable, and an abuse of discretion, to invoke the rule of Fischer-Hansen to allow petitioners to proceed directly against UCC here without first seeking to recover in India either from the fund or from the plaintiffs there whom they claim to represent.
 
 
 52
 We recognize that our decision is based upon a rationale different from that invoked by the district court. It is axiomatic, however, that we may affirm "on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." Larsen v. NMU Pension Trust, 902 F.2d 1069, 1070 n. 1 (2d Cir.1990); see also United States v. Hammad, 902 F.2d 1062, 1064 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987).
 
 Conclusion
 
 53
 The order of the district court is affirmed.
 
 ALTIMARI, Circuit Judge, concurring:
 
 54
 I concur in affirming the district judge's denial of appellants' attorneys' fee applications but write separately because the majority has adopted an incomplete analysis of this issue.
 
 
 55
 This Court previously affirmed the district court's dismissal of the underlying action for which attorneys' fees are now sought. We stated:
 
 
 56
 Once [the district court] dismisses [the United States] proceedings on grounds of forum non conveniens it ceases to have any further jurisdiction over the matter.... The concept of shared jurisdictions is both illusory and unrealistic. The parties cannot simultaneously submit to both jurisdictions the resolution of the pre-trial and trial issues when there is only one consolidated case pending in one court.
 
 
 57
 In re Union Carbide Corp. Gas Plant Disaster at Bhopal, 809 F.2d 195, 205 (2d Cir.), cert. denied, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987). In contrast, the majority now presumes that the district court has jurisdiction and affirms on the basis that it would be an abuse of discretion for the district court to entertain the fee applications where the applicants have made no attempt to move against the fund in India. In my view, the majority opinion fails to properly adhere to our earlier pronouncement that, following the forum non conveniens dismissal, the district court "cease[d] to have any further jurisdiction over the matter." Id.
 
 
 58
 The cases cited in the majority opinion to support the ancillary jurisdiction over appellants' fee applications are unpersuasive. See, e.g., Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir.1988); United States v. Ford, 650 F.2d 1141, 1143-44 (9th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982); Reiser v. Del Monte Properties Co., 605 F.2d 1135, 1140 (9th Cir.1979); Grimes v. Chrysler Motors Corp., 565 F.2d 841, 843-44 (2d Cir.1977) (per curiam); Schmidt v. Zazzara, 544 F.2d 412, 414 (9th Cir.1976); Application of Kamerman, 278 F.2d 411, 412-13 & n. 1 (2d Cir.1960). These cases establish a general jurisdictional rule permitting the consideration of attorneys' fee applications after an action is no longer pending. Cf. Barr Laboratories, Inc. v. Abbott Laboratories, 867 F.2d 743, 749 (2d Cir.1989) (Altimari, J., concurring). However, there is a fundamental difference between the present case and those cases in which a fee application is made following a voluntary discontinuance or a dismissal for mootness. The majority opinion permits consideration of attorneys' fee applications after a forum non conveniens dismissal which was conditioned on the acceptance of jurisdiction by a foreign court--a condition which was satisfied. Cf. Mokhiber ex rel. Ford Motor Co. v. Cohn, 783 F.2d 26, 28 (2d Cir.1986) (per curiam) ("[T]he establishment of conditions [to a forum non conveniens dismissal] has been deemed by one [New York] court to signify that a court retains jurisdiction until the matter is transferred to the other forum.") (emphasis added) (citing Tomaszewski v. Cleveland, 103 Misc.2d 355, 425 N.Y.S.2d 966 (Sup.Ct.1980), aff'd, 81 A.D.2d 1018, 440 N.Y.S.2d 142 (4th Dep't 1981), rev'd on other grounds, 55 N.Y.2d 852, 432 N.E.2d 601, 447 N.Y.S.2d 707 (1982)); see also Epstein v. Sirivejkul, 64 A.D.2d 216, 409 N.Y.S.2d 438, 439-40 (3d Dep't 1978), aff'd, 48 N.Y.2d 738, 397 N.E.2d 1326, 422 N.Y.S.2d 658 (1979). Exercising ancillary jurisdiction after a foreign court has accepted jurisdiction over the matter creates the potential for the "shared jurisdiction[ ]" we deemed "illusory and unrealistic" in our prior decision. In re Union Carbide, 809 F.2d at 205. I believe this potential should be avoided.
 
 
 59
 Consequently, I would affirm the district court's dismissal of appellants' attorneys' fee applications for lack of subject matter jurisdiction.
 
 
 
 [1]
 On March 29, 1985, the Republic of India enacted the Bhopal Gas Leak Disaster (Processing of Claims) Act, which provided the "Central Government" of India with the "exclusive right to ... represent, and act in place of (whether within or outside India) every person who has made, or is entitled to make, a [Bhopal-related] claim." The Act permitted, however, "at the expense of such person, a legal practioner of his choice to be associated in the conduct of any suit or other proceeding relating to his claim." UOI is the "Central Government" of the Republic of India
 
 
 [2]
 Section 475 provides in relevant part:
 From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department ... the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.
 
 
 [3]
 Section 310 of the recently enacted Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5113, added new section 1367 to title 28 of the United States Code. Section 1367 is titled "Supplemental jurisdiction," which refers to the doctrines of pendent and ancillary jurisdiction. See 136 Cong.Rec. S17580 (daily ed. Oct. 27, 1990) (section analysis of Sec. 310). Section 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction" (emphasis added). This enactment, although not applicable here because of its effective date, see section 310(c), supports our view that the determination whether to exercise ancillary jurisdiction following the dismissal of the initial claims is a matter of judicial discretion
 
 
 [4]
 Since UOI is the "Central Government" of the Republic of India, see supra note 1, it appears likely that any claim directly against UOI in our courts would be precluded by considerations of comity, and (unless waived) sovereign immunity